[Civ. No. 17620. Third Dist. Nov. 3, 1978.]

SIERRA BREEZE et al., Petitioners, v.
THE SUPERIOR COURT OF EL DORADO COUNTY, Respondent;
FRANKLIN K. LANE, Real Party in Interest.

## Counsel

Lobner & Bull and Kneeland H. Lobner for Petitioners.

No appearance for Respondent.

McKinstry, Driscoll & Tarlton and Daryl J. McKinstry for Real Party in Interest.

## OPINION

**REYNOSO, J.**—We are called upon to determine, in the context of the facts we relate below, whether the publishing of an article which expresses an opinion, may subject a newspaper to an action for libel. The question, we are convinced, must be answered in the negative.

The Sierra Breeze, an El Dorado County newspaper, and Henry A. Nickel, its owner,[1] filed a petition for writ of mandate[2] directing the El Dorado County Superior Court to grant their motion for summary judgment in a lawsuit filed by real party in interest Franklin K. Lane. Petitioner argues that since there is no triable issue of fact the trial court abused its discretion in denying the motion for summary judgment. We agree; accordingly, we issue a peremptory writ of mandate.

### 1. *The Issue*

In his complaint for libel Lane alleged that he was the duly elected County Supervisor for the County of El Dorado and had served in that capacity for a period of four years. He charged that on October 21, 1976, in all editions of the Sierra Breeze, petitioner published on the front page an article in which it falsely and maliciously and with the intent to injure, disgrace and defame, stated that "Kutter and Lane vote to squander property tax funds for Tahoe airport." Lane alleged that the statements in the article were false as they relate to him, and that they were read by readers throughout the County of El Dorado. The article was published with knowledge of its falsity with a reckless disregard regarding its truth.

---

[1] Sierra Breeze and Nickel are referred collectively as "petitioner."

[2] A writ of mandate is a proper remedy to compel a trial court to grant a motion for summary judgment where the affidavits in support of the moving party are sufficient to sustain a judgment in his favor and his opponent does not by counteraffidavit show facts sufficient to present a triable issue of fact. (*Roman Catholic Archbishop* v. *Superior Court* (1971) 15 Cal.App.3d 405, 410 [93 Cal.Rptr. 338]; *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 266 [83 Cal.Rptr. 237].) Petitioner has alleged that he has no other plain, speedy and adequate remedy in the ordinary course of the law in that denial of his petition will subject him to a long jury trial with attendant expenses. On the showing made this court, in its discretion, may properly grant the petition for writ of mandate.

By issuing the alternative writ of mandate we have necessarily determined that there is no adequate remedy in the ordinary course of the law and that this proceeding is an appropriate one for the exercise of our original jurisdiction. (*People* ex. rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Mannheim* v. *Superior Court* (1970) 3 Cal.3d 678, 685-686 [91 Cal.Rptr. 585, 478 P.2d 17].)

## 2. *The Facts*

In support of the motion for summary judgment[3] petitioner submitted extensive documents in which it attempted to show the truth of the statements contained in the article. In reply Lane submitted a declaration in which he stated, that it has been and is his opinion that the Lake Tahoe Airport was important to the county's general economy and that its continued operation was required even though the airport revenues were insufficient to meet the costs of operation. He further declared that "I have never, either alone, or in conjunction with Supervisor Kutter or any other supervisor voted to squander property tax funds for the Lake Tahoe Airport." On information and belief he maintained that declarations could be obtained from other supervisors to support the budgeting of funds for the airport as necessary to the sound economy of the county, but that none were obtained due to the shortness of time. Lane's points and authorities make clear that he does not contest the truth of the article, but only the conclusion that his vote should be considered "squandering" of public money. Lane's concern is that the language is just an opinion of petitioner, but was not stated as opinion.

However, he argues that the word "squander" accuses him of wasting, throwing away, or misspending public funds. The defamatory impact of the publication, he urges, should be measured by the natural and probable effect on the mind of the average reader. As such, a triable issue of fact exists as to the truth of the headline.

## 3. *The Resolution*

Our Supreme Court has spoken: "An essential element of libel . . . is that the publication in question must contain a false statement of *fact*. As expressed by the United States Supreme Court: 'The *sine qua non* of recovery for defamation in a labor dispute under *Linn* is the existence of falsehood. . . . Before the test of reckless or knowing falsity can be met, there must be a false statement of fact.' [Citation omitted.] This requirement, which is by no means limited to the labor dispute context, is constitutionally based. The reason for the rule, well stated by the high court, is that 'Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the

---

[3]A trial court shall grant a motion for summary judgment if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, par. 3.)

competition of other ideas.' [Citation omitted.] In this context courts apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as constitutionally protected and imposing on the other civil liability for its abuse." (*Gregory* v. *McDonnell Douglas Corp.* (1976) 17 Cal.3d 596, 600-601 [131 Cal.Rptr. 641, 552 P.2d 425]; italics in original.) The critical determination of whether the allegedly defamatory statement constitutes fact or opinion is a question of law. (*Id.*, at p. 601.)

Under the circumstances of this case we believe that the use of the word "squander" by the Sierra Breeze was the statement of an opinion. The article which followed the headline extensively set forth the reasons the paper believed that Lane's vote was a squandering of public money. No contention is raised that the article misstated the facts. The article, taken as a whole, was critical of Lane in his voting as a supervisor. Nonetheless, the statement was an opinion, no more, and as such cannot be considered libelous.

■ The article in question must be considered in light of the fact that Lane, as a county supervisor, was a public figure. A recent case, *Scott* v. *McDonnell Douglas Corp.*, has memorialized the importance of that fact: " '[T]he right of criticism rests upon public policy and those who seek office should not be supersensitive or too thin-skinned concerning criticism of their qualifications [citation omitted]. In commenting upon a published article of the character here involved the supreme court of Nebraska [*sic*; actually Wisconsin] used the following apt language: "It relates to the fitness of those who adhere to the ruling clique and their conduct in office. It imputes no crime to them. It employs no degrading or insulting epithets toward them, but in extravagant language denounces them as derelict in the duties of their office, unfit, unfaithful, etc. . . ." And, again, it has been said that it is one of the infelicities of public life that a public officer is thus exposed to critical and often unjust comment; but these, unless they pass the bounds of what the law will tolerate, must be borne for the sake of maintaining free speech.' [Citation omitted.]" (*Scott* v. *McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277, 289 [112 Cal.Rptr. 609].) "[I]t is settled law that mere expression of opinion or severe criticism is not libelous, even though it adversely reflects on the fitness of an individual for public office." (*Yorty* v. *Chandler* (1970) 13 Cal.App.3d 467, 472-473 [91 Cal.Rptr. 709].)

The article which appeared in the Sierra Breeze, while critical of Lane, does not support an action in libel since it was the expression of a political opinion.

## 4. *The Added Burden of a Public Official*

■ The fact that Lane is a public official imposes a greater burden upon him. The constitutional guarantees of freedom of speech and freedom of the press demand a high standard in the showing required to punish as libel the publication of opinions on public issues. The United States Supreme Court explained that: "The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254, 279-280 [11 L.Ed.2d 686, 706, 84 S.Ct. 710, 95 A.L.R.2d 1412].) The court approved language of the Supreme Court of Kansas, in which that court stated: " 'It is of the utmost consequence that the people should discuss the character and qualifications of candidates for their suffrages. The importance to the state and to society of such discussions is so vast, and the advantages derived are so great, that they more than counterbalance the inconvenience of private persons whose conduct may be involved, and occasional injury to the reputations of individuals must yield to the public welfare, although at times such injury may be great. The public benefit from publicity is so great, and the chance of injury to private character so small, that such discussions must be privileged.' " (376 U.S. at p. 281 [11 L.Ed.2d at p. 207]; see *Coleman* v. *MacLennan* (1908) 78 Kan. 711, 724 [98 P. 281, 286].)

In order to recover Lane must show not only that the use of the word "squander" was false and that it was a false statement of fact rather than opinion, but that it was published with malice. Malice, in this context, means that it was published with knowledge of its falsehood or with reckless disregard for whether it was false or not. Lane does not allege that the article was printed with malice so defined. Rather, the documents before the trial court indicate that the question of the advisability of the expenditure of funds for a Lake Tahoe Airport was a matter of debate, Lane holding the opinion that the expenditure was necessary, and petitioner believing that the expenditure was a waste of county funds. Even were we to assume that Lane could prove that the airport was economically important to the county, Lane has pointed to no evidence by which it could be implied that petitioner did not honestly hold the belief that the expenditure was wasteful. The use of the word "squander," while perhaps a strong label to be applied to petitioner's position, was nonetheless a statement of opinion and does not form the basis for a libel

suit. It is part of the political give and take which any aspirant to public office must face with knowledge that the public will ultimately decide the issue in the voting booth. There is thus no basis for a lawsuit here.

5. *The Disposition*

Let a peremptory writ of mandate issue directing the Superior Court of El Dorado County to grant petitioner's motion for a summary judgment.

Puglia, P. J., and Paras, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied January 17, 1979. Richardson, J., did not participate therein.