[Civ. No. 20196. Third Dist. July 23, 1981.]

COLLEEN ELIZABETH CHAMBERS et al., Petitioners, v.
THE SUPERIOR COURT OF SHASTA COUNTY, Respondent;
THE STATE OF CALIFORNIA, Real Party in Interest.

COUNSEL

Memering & DeMers and Henry R. Crowle for Petitioners.

No appearance for Respondent.

Richard G. Rypinski, Gordon S. Baca, Stephanie Sakai and Milton B. Kane for Real Party in Interest.

OPINION

CARR, J.—By petition for writ of mandate plaintiffs seek relief from an order of the trial court granting defendants' motion to disqualify plaintiffs' law firm from further representing plaintiffs in the underlying action.

 Confronting us is an issue of first impression in this state on vicarious disqualification of a former government employee's current law firm. We view the issue in light of substantial countervailing policy concerns and conclude that vicarious disqualification under the facts of this case was unwarranted and an abuse of discretion.

On January 23, 1978, petitioners, Colleen and Alice Chambers, filed a complaint essentially alleging that defendants State of California (hereafter State) and County of Shasta so negligently serviced Route 151 that the road surface was in a dangerous, defective and unsafe condition, causing the car of defendant, Leslie Ann Kerns to collide with the car driven by plaintiff, Colleen Elizabeth Chambers with resulting injuries to Chambers.

On August 11, 1980, State moved to disqualify plaintiffs' law firm, Memering & DeMers, on the ground a current member of the firm, Patrick J. Waltz, previously was employed by the State and possessed confidential information regarding this action.[1] In support of its motion, defendant submitted the declaration of Milton B. Kane, an attorney for State, wherein Kane stated Waltz had access to confidential information from cases of a similar nature to this action and Waltz had, in fact, discussed this case with Kane while still an employee of the State.

In opposition to the motion, petitioners filed a declaration by Waltz in which he stated he did not represent the defendant in this matter, that he is not working on the case in his employment at Memering & DeMers; that while employed with the State he "was never assigned to do any legal work on the subject law suit," although Kane had briefly discussed with him the facts of the subject lawsuit; that he had specifically stated to Kane and Gordon Baca, their supervisor, that he would not discuss with anyone in the Memering & DeMers law firm the facts of the lawsuit; that Waltz specifically told Memering & DeMers its offer of employment was accepted on the condition that he would not be asked to discuss or involve himself in any cases on which he had worked or of which he had acquired any knowledge during the course of his State employment. Waltz's under-penalty-of-perjury declaration concluded with the averment that he has not discussed nor will he discuss with anyone, any aspect of the subject suit. The record is barren of any evidence Waltz used information from his State employment in any manner which would be adverse to defendant, or in any manner at all.

Following the granting of defendant's motion on August 12, 1980, plaintiffs filed a motion for reconsideration, supported by declarations of Waltz and Crowle.

---

[1] Since oral argument petitioners have advised the court that Patrick Waltz has left the law firm in question for other employment. We do not perceive the issue as moot because of the important policy issues involved and because the real party in interest would still be free to pursue disqualification by reason of the presence of Waltz within the firm during the pretrial stages of the litigation.

Both Waltz and Crowle declared defendant's motion to disqualify was pursuant to a new policy adopted by the new chief counsel of the department. Crowle declared he formerly had been employed as an attorney for the Department of Transportation, and in this capacity, worked on and knew of a number of cases involving counsel who were formerly attorneys for the Department of Transportation. Yet, Crowle stated, he had never known of an instance in which the State had made a motion to disqualify its former employees' current firms because of their prior employment, and throughout his employment with Memering & DeMers, the Department of Transportation has never moved to disqualify the firm because of his former employment, although a number of cases involving the department have been handled by Memering & DeMers during his employment.

Upon denial of the motion for reconsideration, and upon application we issued an alternative writ.

Initially we note that State as real party in interest has filed only a memorandum of points and authorities in opposition to the petition. Thus, we accept as true the uncontradicted allegations of the petition and its supporting exhibits.[2]

■ State initially contends petitioner has a remedy at law in the form of a direct appeal (*Jacuzzi* v. *Jacuzzi, Bros., Inc.* (1963) 218 Cal. App.2d 24 [32 Cal.Rptr. 188]) and therefore mandamus is inappropriate. (*Lincoln* v. *Superior Court* (1943) 22 Cal.2d 304 [139 P.2d 13].) Where the remedy by appeal is not speedy and adequate, then in an otherwise proper case, mandate may lie. (*Hampton* v. *Superior Court*

---

[2]Appropriate to this circumstance is a footnote to the court's opinion in *Pacific Indem. Co.* v. *Superior Court* (1966) 246 Cal.App.2d 63, 65 [54 Cal.Rptr. 470], wherein the court stated: "Upon the filing of the petition in this court real party filed points and authorities in opposition thereto. (Cal. Rules of Court, rule 56(b).) Upon our issuance of the alternative writ, real party, instead of filing a return, filed with us a letter requesting us to 'regard ... [the foregoing] "Points and Authorities in Opposition to Petition ..." as our Written Return to the Writ.' Real party thus appears to misunderstand the instant proceedings and the rules governing them. The points and authorities which he seeks to adopt by reference do not satisfy the requirements of a return. They are not verified and they neither adhere to the format nor fully perform the function of a return to the writ. Under our rules the real party 'may make a return, by demurrer, verified answer or both.' (Cal. Rules of Court, rule 56(c).) The document attempted to be utilized here is neither: it in no way resembles a demurrer and, aside from being unverified, is not an answer directly responsive to the allegations of the petition. (See generally 3 Witkin, Cal. Procedure (1954) pp. 2555-2556.) Therefore, the so-called return, for what it is worth, contains no denials of the allegations of the petition." (See *Rice* v. *Superior Court* (1975) 49 Cal.App.3d 200, 203 [122 Cal.Rptr. 389].)

(1952) 38 Cal.2d 652, 657 [242 P.2d 1].) This case is already over three years old. The plaintiff, virtually an innocent bystander, and entitled to have counsel of choice, should not be subjected to unnecessary further delays. With that in mind and in the interest of judicial economy, this court, in its discretion, may properly grant the petition for writ of mandate. We note that by issuing the alternative writ we have necessarily determined there is no adequate remedy in the ordinary course of the law and this proceeding is an appropriate one for the exercise of our original jurisdiction. (*People* ex. rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Sierra Breeze* v. *Superior Court* (1978) 86 Cal.App.3d 102, 104 [149 Cal. Rptr. 914].)

██ The Rules of Professional Conduct of the State Bar of California, provide: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rule 4-101, Rules Prof. Conduct.) "This rule implements the duty of an attorney 'To maintain inviolate the confidence, and at every peril to himself to preserve the secrets of his client.' (Bus. & Prof. Code, § 6068, subd. (e); *Jacuzzi* v. *Jacuzzi Bros., Inc.*, 218 Cal.App.2d 24, 28 [32 Cal.Rptr. 188].) Thus it is only within the context of the attorney-client relationship that the impact of this rule is felt. Once the relationship is established, the question is whether confidential information was imparted during its existence. For a conflict to arise there must be a threatened disclosure of that information resulting from adverse employment of the attorney. '[N]othing in the rule prohibits an attorney from accepting employment adverse to a former client if the matter has no relationship to confidential information acquired by reason of or in the course of his employment by the former client . . . .' (*Goldstein* v. *Lees*, 46 Cal.App.3d 614, 619 [120 Cal.Rptr. 253].)" (*In re Charles L.* (1976) 63 Cal.App.3d 760, 763-764 [132 Cal.Rptr. 840].)

The general concept of vicarious disqualification has been treated in a long line of federal cases. (See, e.g. *Trone* v. *Smith* (9th Cir. 1980) 621 F.2d 994; *Cinema 5, Ltd.* v. *Cinerama, Inc.* (2d Cir. 1976) 528 F.2d 1384; *Hull* v. *Celanese Corp.* (2d Cir. 1975) 513 F.2d 568; *Silver Chrysler Plymouth, Inc.* v. *Chrysler Mot. Corp.* (2d Cir. 1975) 518 F.2d 751; *Laskey Brothers of W. Va. Inc.*, v. *Warner Bros. Pictures* (2d Cir. 1955) 224 F.2d 824, cert. den., 350 U.S. 932 [100 L.Ed. 814, 76

S.Ct. 300]; *Consolidated Theatres v. Warner Bros. Cir. Man. Corp.* (2d Cir. 1954) 216 F.2d 920; *In re Airport Car Rental Antitrust* (N.D.Cal. 1979) 470 F.Supp. 495; *United States v. Standard Oil Company* (S.D.N.Y. 1955) 136 F.Supp. 345; *T.C. Theatre Corp. v. Warner Bros. Pictures* (S.D.N.Y. 1953) 113 F.Supp. 265.)

In main, these decisions are geared to pertinent Disciplinary Rules promulgated by the American Bar Association (ABA), as contained in the Code of Professional Responsibility (hereafter the Code).[3]

Disciplinary Rule 5-105(D) relating to vicarious disqualification states "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment."

Disciplinary Rule 4-101(B) is violated when a lawyer knowingly reveals a confidence or secret of a client or uses a confidence or secret improperly as specified in the rule. As a procedural matter, many courts have held that a lawyer is disqualified to represent a party in litigation if he formerly represented an adverse party in a matter "substantially related" to the pending litigation. (See *Emle Industries, Inc. v. Pantentex, Inc.* (2d Cir. 1973) 478 F.2d 562; *American Can Company v. Citrus Feed Co.* (5th Cir. 1971) 436 F.2d 1125; *Silver Chrysler Plymouth, Inc. v. Chrysler Mot. Corp., supra*, 518 F.2d 751; Kaufman, *The Former Government Attorney and the Canons of Professional Ethics* (1957) 70 Harv.L.Rev. 657.) The disqualification is prompted by the policy concern of protecting the former client in advance of and against a possible future violation of Disciplinary Rule 4-101 (B).

Canon 9 concerns the lawyer's obligation to avoid even the appearance of impropriety and Disciplinary Rule 9-101(B) provides that "A lawyer shall not accept private employment in a matter which he had substantial responsibility while he was a public employee."

Of crucial significance to the issue before us is formal opinion No. 342 of the ABA Standing Committee on Ethics and Professional Responsibility which addressed the concern of many government agencies and former government lawyers now in private practice with respect to

---

[3]*The Code also serves to guide California courts in related matters. (See Chadwick v. Superior Court* (1980) 106 Cal.App.3d 108, 116-118 [164 Cal.Rptr. 864].)

interpretation and application of Disciplinary Rule 9-101 (B).[4] Formal opinion No. 342 concluded that "... DR 9-101 (B)'s command of refusal of employment by an individual lawyer does not necessarily activate DR 5-105 (D)'s extension of that disqualification. The purposes of limiting the mandate to matters in which the former public employee had a substantial responsibility are to inhibit government recruitment as little as possible and enhance the opportunity for all litigants to obtain competent counsel of their own choosing, particularly in specialized areas. An inflexible extension of disqualification throughout an entire firm would thwart those purposes. So long as the individual lawyer is held to be disqualified and is screened from any direct or indirect participation in the matter, the problem of his switching sides is not present; by contrast, an inflexible extension of disqualification throughout the firm often would result in real hardship to a client if complete withdrawal of representation was mandated, because substantial work may have been completed regarding specific litigation prior to the time the government employee joined the partnership, or the client may have relied in the past on representation by the firm."[5]

Formal opinion No. 342 expressed concern for important policy considerations such as interference with the right to counsel of one's choice; a restrictive impact upon the disqualified attorney's future employment prospects; and potential harm to the ability of government to attract talented young attorneys, due to reduction of subsequent job opportunities (i.e., such attorneys might avoid government service "like the plague" for fear of becoming a carrier of the contagion of disqualification). Mindful of those considerations the Ethics Committee stated that Disciplinary Rule 5-105(D) should not apply to the firm, partners, or associates of a disqualified lawyer who had been screened "to the satisfaction of the government agency concerned from participation in the work and compensation of the firm or any matter over which as a public employee he had substantial responsibility."

Subsequently, the United States Court of Claims applied the rationale of formal opinion No. 342 in vacating a trial court order disqualifying the law firm of Krooth & Altman. (*Kesselhaut v. United*

---

[4] ABA formal opinion No. 342 issued November 24, 1975, published in 62 ABA J. (1976) page 517.

[5] See Liebman, *The Changing Law of Disqualification: Role of Presumption and Policy* (1979) 73 Nw.U.L.Rev. 996, 1019-1027.

*States* (2d Cir. 1977) 555 F.2d 791.) The Kesselhaut firm had represented the Federal Housing Administration (FHA). Subsequently, the Kesselhaut firm retained the law firm of Krooth & Altman in an action to recover fees from the FHA. Adolphus Prothro was a member of the Krooth firm but previously had been general counsel of the FHA while that agency had been Kesselhaut's client. Since Prothro was personally disqualified from representing Kesselhaut in its action against the government, the trial court disqualified the entire firm.

In its per curiam opinion the court of claims determined that Krooth & Altman had followed a screening procedure sufficient to isolate Prothro from the subject case so that exclusion of Krooth & Altman was unjustified. (*Id.*, at p. 793.)

The court's discussion of the merits of screening, as opposed to mechanical, vicarious disqualification is appropriate to the instant case.

"We share the view expressed in the above-mentioned Formal Opinion 342 that an inexorable disqualification of an entire firm for the disqualification of a single member or associate, is entirely too harsh and should be mitigated by appropriate screening such as we now have here, when truly unethical conduct has not taken place and the matter is merely one of the superficial appearance of evil, which a knowledge of the facts will dissipate. We note that the thousands of attorneys employed in Government do not, for the most part, have Civil Service protection, and are subject to removal without cause at any time. Personal disqualifications may be few in the cases of 'journeyman' attorneys, but will be extensive in the case of one holding high supervisory responsibility, like Mr. Prothro. Should an attorney, having left Government perhaps contrary to his own volition, ineluctably infect all the members of any firm he joined with all his own personal disqualifications, he would take on the status of a Typhoid Mary, and be reduced to sole practice under the most unfavorable conditions. There will be instances where no screening procedure will be adequate, and the infection must be allowed to take its course. When screening is used it must, as here, be specific and inflexible. Each case depends on its own merits.

"The iron rule urged by the trial judge would act as a strong deterrent to the acceptance of Government employment by the most promising class of young lawyers. Indeed, in fairness to them, it would be necessary to warn them before signing on, of the disabilities likely to be incurred at a later date. Attorneys having both private and Govern-

ment experience are often better qualified to be of value to courts, as their officers, and to their clients, public and private, than those having one or the other experience alone. If interchange between the private and public sectors of the bar is to be halted, and careers in such sectors made matters of separate tracks that will never converge, it should be only upon full consideration of all the legal incidents of Government employment of lawyers, and it should be done overtly, and not achieved as a collateral consequence of a disciplinary rule ostensibly having other purposes." (*Id.*, at pp. 793-794.)

Significantly, the court of claims went beyond the bounds of ABA formal opinion No. 342, which left approval of any screening procedure to the government agency. The court stated "We consider further that it is the non-delegable responsibility of the court to obtain the adherence of its bar to proper ethical standards in the management of cases before it. Accordingly, the consent of the adverse party would not necessarily compel our assent to a flagrant conflict of interest, nor, on the contrary, should the withholding of consent by the Government, as here, be binding on us if, as here, it appears now to be unjustified, whether or not it may have been justified initially. Parties can be heard on apparent conflicts of interests on the part of adversary counsel, but they cannot be allowed to debase the matter into another phase of adversary tactics." (*Id.*, at p. 794.)

In two recent opinions the Second Circuit of the United States Court of Appeals has expressed its reluctance to disqualify a firm where the primary concern is the appearance of impropriety. (*Armstrong* v. *McAlpin* (1980) 625 F.2d 433; *Bd. of Ed. of N.Y. City* v. *Nyquist* (1979) 590 F.2d 1241.) In *Armstrong* the court's opinion incorporated portions of the *Nyquist* opinion as follows: "'Our reading of the cases in this circuit suggests that we have utilized the power of trial judges to disqualify counsel where necessary to preserve the integrity of the adversary process in actions before them. In other words, with rare exceptions disqualification has been ordered only in essentially two kinds of cases: (1) where an attorney's conflict of interests in violation of Canons 5 and 9 of the Code of Professional Responsibility undermines the court's confidence in the vigor of the attorney's representation of his client, ... or more commonly (2) where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, for example, in violation of Canons 4 and 9, thus giving his present client an unfair advantage .... But in other kinds of cases, we have shown considerable reluctance to

disqualify attorneys despite misgivings about the attorney's conduct. . . . This reluctance probably derives from the fact that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and that disqualification motions are often interposed for tactical reasons. . . . And even when made in the best of faith, such motions inevitably cause delay.' Id. at 1246 (citations and footnotes omitted) . . . . [¶] Weighing the needs of efficient judicial administration against the potential advantage of immediate preventative measures, we believe that unless an attorney's conduct tends to 'taint the underlying trial' . . . by disturbing the balance of the presentations in one of the two ways indicated above, courts should be quite hesitant to disqualify an attorney. . . . (*Id.* at 1246 (citation omitted)." (*Armstrong* at pp. 444-445.)

After reviewing the development of vicarious disqualification the author of a recent law review article extols the benefits of screening in stating: "Disqualification is an excessive sanction for the appearance of a concededly nonexistent impropriety. A court concerned with the public's baseless perceptions of evil would be well-advised to follow *Nyquist*'s advice to proceed cautiously. The public, after all, might be equally, if not more concerned, over the use of disqualification as a litigation tactic resulting in hardships to innocent clients . . . . Moreover, if the public were inclined to think about the effect of disqualification on the government's ability to attract and retain competent professionals, it might also be unwilling to give judges the authority to enact into law their necessarily subjective appraisals of public opinion. Such considerations highlight the wisdom of *Nyquist*'s teaching that the notion of 'appearance of impropriety' is simply too vaporous to support a disqualification order, especially when compared to the concrete effects disqualification has on the client, the attorneys, the underlying litigation, and the judicial system. In light of the weighty policies, articulated in *Kesselhaut*, Formal Opinion 342, and elsewhere, against disqualification of the firms of former government attorneys, . . . hypersensitivity to ethical nuances must be rejected as unwarranted in the disqualification context." (Fns. omitted.)[6]

We adopt the approach articulated in such cases as *Kesselhaut* v. *United States, supra,* 555 F.2d 791, *Armstrong* v. *McAlpin, supra,* 625 F.2d 433, and *Board of Education* v. *Nyquist, supra,* 590 F.2d 1241, as

---

[6]See Comment, *The Chinese Wall Defense to Law-Firm Disqualification* (1980) 128 U.Pa. L.Rev. 677, 700.

it applies to vicarious disqualification of a former government employee's law firm.

In the instant case, we conclude the trial court abused its discretion in disqualifying the firm of Memering & DeMers.[7] First, there is no evidence that Waltz had any responsibility over matters related to the action herein or that he acquired confidential information regarding the action. Moreover, the firm has undertaken sufficient protective measures to screen Waltz from any participation in the subject action. This case was filed almost three and one-half years ago and disqualification at this late date would have an immediate adverse effect on the innocent client, and unnecessarily delay the judicial process.

Waltz has declared that he has not and will not discuss the case with anyone; the State has stated in its points and authorities that it "wishes to make it abundantly clear that this motion in no way should be misconstrued to question Mr. Waltz's integrity nor [*sic*] professional ethics."

We perceive no conduct on Waltz's part which would taint the underlying trial, and any concern for an appearance of impropriety is greatly outweighed by the significant policy concerns expressed herein.

The alternative writ of mandate is discharged. Let a peremptory writ of mandate issue, commanding the trial court to vacate its order disqualifying the law firm of Memering & De Mers from representing the plaintiffs in this action and to enter a new order denying the motion to disqualify.

Reynoso, Acting P. J., and Perluss, J.,* concurred.

---

[7]Under section 128, subdivision 5 of the Code of Civil Procedure the trial court is vested with the power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter appertaining thereto." The court's exercise of that power will not be disturbed unless there is an abuse of discretion. (Cf. *Chronometrics, Inc.* v. *Sysgen, Inc.* (1980) 110 Cal.App.3d 597, 608 [168 Cal.Rptr. 196]. See also *Santandrea* v. *Siltec Corp.* (1976) 56 Cal.App.3d 525 [128 Cal.Rptr. 629].)

*Assigned by the Chairperson of the Judicial Council.