The HAAGEN–DAZS COMPANY, INC., et al., Plaintiffs,

v.

PERCHE NO! GELATO, INC., Defendant.

The HAAGEN–DAZS COMPANY, INC., et al., Plaintiffs,

v.

DOUBLE RAINBOW GOURMET ICE CREAMS, INC., et al., Defendants.

DOUBLE RAINBOW GOURMET ICE CREAMS, INC., Plaintiff,

v.

The PILLSBURY COMPANY, et al., Defendants.

And related counterclaims.

Nos. C–85–5819–CAL, C–85–6553–CAL and C–86–0853–CAL.

United States District Court, N.D. California.

May 21, 1986.

Pillsbury, Madison & Sutro, William C. Miller, Roland W. Selman, Patrick C. Marshall, San Francisco, Cal., for Pillsbury and Haagen-Dazs.

Joseph M. Alioto, Alioto & Alioto, San Francisco, Cal., Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, Minn., John H. Boone, San Francisco, Cal., for Double Rainbow.

Stuart H. Savett, David H. Weinstein, Robert J. La Rocca, Kohn, Savett, Marion & Graf, P.C., Philadelphia, Pa., Josef D. Cooper, Douglas A. Marshall, San Francisco, Cal., for Perche No! Gelato.

Michael C. Kelley, Kadison, Pfaelzer, Woodard, Quinn & Rossi, Los Angeles, Cal., for other parties.

## OPINION AND ORDER RE DISQUALIFICATION OF COUNSEL

LEGGE, District Judge.

### I.

This is a motion by the Pillsbury Company, Inc., ("Pillsbury"), the parent company of Haagen-Dazs Company, Inc. ("Haagen-Dazs"), for the disqualification of counsel for Double Rainbow Gourmet Ice Cream, Inc. ("Double Rainbow") in this antitrust litigation.

Double Rainbow is a California corporation engaged in the manufacture and sale of super premium ice cream. Pillsbury, a Delaware corporation with its principal place of business in Minneapolis, Min-

nesota, entered the super premium ice cream market when it purchased Haagen-Dazs in 1983. Haagen-Dazs is a New Jersey corporation which manufactures and sells super premium ice cream. Haagen-Dazs and Double Rainbow are competitors. The main issue presently raised by this litigation is whether Haagen-Dazs' distribution policies violate the antitrust laws.[1]

Pillsbury and Haagen-Dazs filed this motion to disqualify both San Francisco and Minneapolis counsel from representing Double Rainbow in this series of actions, as well as "any other party ... [in] substantially related litigation."[2]

## II.

The basis for this motion is the past and present employment of Mr. Franklin C. Jesse, Esq., an attorney formerly employed as in-house counsel in the Pillsbury Company legal department, and currently associated with Double Rainbow's Minneapolis counsel, Gray, Plant, Mooty, Mooty & Bennett ("the Gray firm"). Haagen-Dazs and Pillsbury contend that Mr. Jesse's former employment with Pillsbury and current employment with the Gray firm require disqualification of Mr. Jesse. They assert that, as a Pillsbury attorney for ten years, Mr. Jesse was aware of Haagen-Dazs' distribution policies, and had access to confidential information relating to the issues underlying this litigation. They also seek an order disqualifying the Gray firm. In addition, they claim that, due to the longstanding affiliation of the Gray firm with Double Rainbow's San Francisco counsel, Alioto & Alioto ("Alioto"), that firm must

also be disqualified from participation in this litigation.

The record discloses that Mr. Jesse went to work in the Pillsbury legal department in 1974 and remained until October 1984. During that period, Mr. Jesse held various positions, including general attorney, senior attorney, international group counsel, and senior corporate counsel. From 1980 until October 1984, Mr. Jesse was also a member of the legal department's administration committee.

It appears that Mr. Jesse worked primarily on international business and legal matters while employed by Pillsbury. After Pillsbury acquired Haagen-Dazs in 1983, Mr. Jesse worked on a joint venture with a Japanese dairy through which Haagen-Dazs sought to introduce its super premium ice cream into the Japanese market. Other legal projects for Haagen-Dazs which were handled by Mr. Jesse included an Australian trademark registration and a sales arrangement in Singapore. Haagen-Dazs contends that the international matters handled by Mr. Jesse, particularly the Japanese venture, required a working knowledge of Haagen-Dazs' franchise and distribution policies, including the domestic policies at issue here. Moreover, Haagen-Dazs alleges that Mr. Jesse has knowledge of Pillsbury's acquisition and marketing strategy, since he was a member of the legal department at the time the policy for entering the super premium ice cream market was adopted. Finally, Mr. Jesse was in the legal department in 1984 at the time that office defended a claim brought by Ben & Jerry's Homemade, Inc., another manufacturer of super premium ice cream,

---

1. Currently, there are four cases pending in the San Francisco Bay Area involving the legality of Haagen-Dazs' distribution policies. The cases are *The Haagen-Dazs Company, Inc. v. Double Rainbow Gourmet Ice Cream, Inc.,* (N.D.Cal. No. C–85–6553 CAL; *The Haagen-Dazs Company, Inc. v. Perche No! Gelato Inc.,* (N.D.Cal. No. C–85–5819 CAL); *Two Count Company, Inc. v. The Haagen-Dazs Company, Inc.,* (Alameda County Superior Court No. H–107998–8); *Double Rainbow Gourmet Ice Creams, Inc. v. The Pillsbury Company,* (N.D.Cal. No. C–86–0583 CAL) (transferred from the Minnesota District

Court on February 18, 1986). Another case, *Perche No! Gelato, Inc. v. The Haagen-Dazs Company, Inc.,* (D.N.J. No. 85–4061, (Stern, J.), was ordered transferred to this court by the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407.

2. The court has determined that the motion to disqualify counsel for Double Rainbow in the Alameda Superior Court action is not properly before this court. The ruling on this motion applies only to the actions pending in this court.

which involved issues identical or similar to those raised in this series of cases.

At the present time, Mr. Jesse is an associate "international counsel" with the Gray firm. Since joining that firm on November 1, 1984, his practice has involved primarily international business matters. Mr. Jesse has stated in a declaration and in a deposition that he has no present knowledge of the distribution policies which are challenged here, and that he was not privy to confidences concerning the issues raised by this litigation. Furthermore, Mr. Jesse states that he has not worked on these cases, or on any of the related cases, and that his only connection with this litigation has been in response to this motion made by Pillsbury and Haagen-Dazs.

### III.

Northern District of California Local Rule 110–3 provides that lawyers shall "comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and decisions of any court applicable thereto."

Rule 1.9(a) of the American Bar Association Model Rules of Professional Conduct (1983)[3] provides that:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

The Ninth Circuit has specifically adopted this "substantial relationship" test, and in *Trone v. Smith,* 621 F.2d 994 (9th

Cir.1980), the court elaborated on the standard by stating that the test is met if the factual contexts of the two representations are similar or related, regardless of "whether confidences were in fact imparted to the lawyer by the client" in the prior representation. *Id.* at 998–99.

The Ninth Circuit has noted that the standards for disqualification embody the principles of Canon 4 of the ABA Model Code of Professional Responsibility, which protects the confidences of a client against disclosure and possible use against the client, and Canon 9, which provides that an attorney must avoid even the appearance of impropriety. *Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439 (9th Cir.), *cert. denied* 464 U.S. 851, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983) (discussing Canon 9). *See also Trone,* 621 F.2d at 999 (discussing Canons 4 and 9). The underlying premise is that "both the fact and appearance of total professional commitment are endangered by adverse representation in related cases." *Trone,* 621 F.2d at 999.

■ A court faced with a disqualification motion need not determine that actual confidences were disclosed to the lawyer.[4] Rather, as the *Trone* court stated, "it is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification." *Id.* Elaborating further on the showing required for disqualification, the *Trone* court stated:

If there is a *reasonable probability* that confidences were disclosed which could be used against the client in a later, adverse representation, a substantial relation between the two cases is presumed.

*Id.* at 998 (emphasis added).

■ Acknowledging the "potential harshness" of this standard, the Ninth Cir-

---

**3.** While the ABA Model Code of Professional Responsibility ("Model Code") has not been incorporated specifically into the Local Rules of this court, California courts have looked to the Model Code to explicate and supplement the rules of professional responsibility governing lawyer conduct in this state. *See Paul E. Iacono Structural Engineer, Inc. v. Humphrey,* 722 F.2d 435, 439 (9th Cir.), *cert. denied* 464 U.S. 851, 104

S.Ct. 162, 78 L.Ed.2d 148 (1983), citing *Chambers v. Superior Court,* 121 Cal.App.3d 893, 898–903, 175 Cal.Rptr. 575, 578–81 (1981).

**4.** To the contrary, the courts have held that such a requirement would, in many instances, involve revelation of the confidences the rule was designed to protect. *Trone,* 621 F.2d at 999.

cuit test for disqualification provides that the lawyer may attempt to rebut the presumption by showing that he "had no personal involvement in such substantially related matters and did not actually receive any confidential information relevant to the matter in which disqualification is sought." *Id.* at 998 n. 3, citing *Gas-A-Tron v. Union Oil,* 534 F.2d 1322, 1324–25 (9th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976); *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 518 F.2d 751, 754 (2d Cir.1975).

Thus, to make the showing necessary for disqualification of Double Rainbow's counsel, Haagen-Dazs and Pillsbury must establish that Mr. Jesse, while at Pillsbury, worked on matters substantially related to this litigation, or that there is a reasonable probability that Mr. Jesse received confidential information. If there is a showing that Mr. Jesse was privy to client confidences substantially related to this litigation, Double Rainbow may then attempt to show that Mr. Jesse had no personal involvement in the substantially related matters.

Regardless of the particular language used by the courts and the rules of professional conduct to define the standards, a common principle underlies all of them: the interests of the clients are primary, and the interests of the lawyers are secondary.

## IV.

■ The court has reviewed the exhibits and memoranda submitted by both parties and in light of the above standards concludes that, while at Pillsbury, Mr. Jesse worked on matters substantially related to this litigation, and that there is a reasonable basis for concluding that he received confidential information relevant to this litigation.

■ The substantial relationship standard does not require the moving parties to point to a specific piece of confidential information which the attorney actually received. The record here discloses substantial similarities in the legal employments of Mr. Jesse and the legal and business mat-

ters involved in those employments. While Mr. Jesse and the Gray firm have attempted to show that his distribution-related work was limited to international matters, it appears that Mr. Jesse had information concerning Haagen-Dazs' domestic distribution strategies as well. Mr. Jesse worked for a lengthy period of time in the Pillsbury legal department, and it is reasonable to conclude that, as a senior attorney in that office, he also had significant contact with Pillsbury management during the formulation of its super premium ice cream acquisition and marketing strategy. While Mr. Jesse states that he was not aware of Haagen-Dazs' distribution policies, his presence in the legal department at the time Pillsbury entered the super premium ice cream market suggests that he was at least exposed to management's and the legal department's consideration of distribution policies. In addition, his employment during the Ben & Jerry's litigation raises an inference that he was privy to information about that litigation which is, in itself, substantially related to this litigation.

In reaching these conclusions, the court has taken into consideration the unique role that access to business thinking plays in the context of antitrust litigation. In *Chugach Electric Association v. United States District Court,* 370 F.2d 441 (9th Cir.1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967), the Ninth Circuit noted that possible access to the business strategies of a former client might put the attorney in a position to acquire "knowledge casting light on the purpose of later acts and agreements" which underlie the antitrust action. *Id.* at 443–44. In addition, the attorney's "knowledge of private matters gained in confidence would provide him with greater insight and understanding of the significance of subsequent events in an antitrust context and offer a promising source of discovery." *Id.* Here, the moving parties are understandably concerned that, given the considerable period of time spent by Mr. Jesse in responsible positions in the Pillsbury legal department, he is

likely to have insights into productive discovery strategies and the business thinking underlying distribution policies.

The court further finds that the presumptions in favor of Pillsbury's and Haagen-Dazs' position have not been rebutted. The record demonstrates that Mr. Jesse did have personal involvement in legal matters which the court finds are substantially related to the issues in this case, and that he did receive certain relevant confidential information.

The court concludes that disqualification of Mr. Jesse is necessary to protect Haagen-Dazs' and Pillsbury's confidences and to avoid the appearance of impropriety.

## V.

The court must then consider whether Mr. Jesse's present employer, the Gray firm, should be disqualified from this litigation.

The Ninth Circuit has ruled that an entire law firm must be disqualified when one of its members was counsel for an adverse party in a substantially related matter. *Trone,* 621 F.2d at 999. Disciplinary Rule 5–105(d) of the Model Code states:

"... if a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, *no partner, or associate, or any other lawyer affiliated with him or his firm,* may accept or continue such employment."

ABA Model Code of Professional Responsibility, DR 5–105(d)(1979) (emphasis added).

Since the court has concluded that Mr. Jesse must be disqualified, it follows under the rule set forth in the *Trone* case and the Model rule that the law firm of Gray, Plant, Mooty, Mooty & Bennett must also be disqualified from further representation in this litigation.

The Gray firm has argued that its disqualification is not mandated because it instituted a screening procedure whereby all files and information relating to this litigation were sealed off from Mr. Jesse. The Ninth Circuit has considered this so-called "Chinese Wall" defense twice, but has left open the question whether such a screening procedure is sufficient to defeat a disqualification motion when a member of the firm has previously worked on matters substantially related to the pending litigation. *See Trone* 621 F.2d at 999 n. 4; *Paul F. Iacono Structural Engineer, Inc.,* 722 F.2d at 441. Other courts have found such screening procedures to be acceptable under certain circumstances. *See, e.g., Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1267 (7th Cir.1983); *La Salle National Bank v. County of Lake,* 703 F.2d 252 (7th Cir.1983); *Armstrong v. McAlpin,* 625 F.2d 433, 442–44 (2d Cir. 1980) *(en banc) vacated on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).[5] At the least, the burden is shifted to the law firm to establish the effectiveness of its "Chinese Wall" procedures.

In this case, it appears that the Gray firm did not institute the "Chinese Wall" measures until *after* the first of these suits had been filed. The record discloses that Mr. Jesse joined the Gray firm in November 1984. The Gray firm was first contacted concerning the litigation in August, 1985. The complaint was filed on August 30, 1985. Haagen-Dazs then requested that the Gray firm disqualify itself on or about October 30, 1985. On November 6, 1985, the Gray firm instituted its screening procedures. In light of the fact that the screening procedures were not instituted until after the litigation commenced, and one year after Mr. Jesse's employment, the court concludes that Double Rainbow's "Chinese Wall" defense will not insulate the firm from disqualification.

Further, Pillsbury and Haagen-Dazs have demonstrated that the interests of those clients would be adversely affected

---

5. The *Armstrong* court found that screening procedures were effective in the context of a firm employing a former government attorney. There, the court endorsed the "Chinese Wall" defense at least in part because of its concern that the government should maintain its ability to recruit highly qualified lawyers for public service. Such a policy consideration is not applicable in this case.

by Gray's continued representation. However, Double Rainbow has not demonstrated that it will suffer any material adverse consequences as a result of Gray's disqualification.

## VI.

■ Haagen-Dazs and Pillsbury argue that the Gray firm and the Alioto firm have a long-standing relationship "characterized by continuous exchange of information, strategy and advice," and that the Alioto firm must therefore be disqualified on the basis of its affiliation with the Gray firm.

The record discloses that Double Rainbow and Two Count Inc., the distributor involved in the related state court action, are clients of the Alioto firm. The Gray firm was retained by Alioto to assist in this litigation, and the Gray firm currently works with Alioto on this and approximately ten other cases. The fee arrangement between the firms is that Alioto compensates the Gray firm for fees it generates, and the clients, Double Rainbow and Two Count, Inc., compensate the Alioto firm.

In evaluating the association of these two firms, the court notes that there is nothing on the record to suggest that Mr. Jesse had any direct contact with the Alioto firm. Rather, Haagen-Dazs seeks to disqualify Alioto by imputing knowledge gained from Mr. Jesse's prior employment, through Gray to the Alioto firm. Additionally, Haagen-Dazs has argued that Mr. Jesse's prior employment has created an appearance of impropriety which may extend to the relationship between the Gray firm and Alioto.

However, on the basis of the record, the court finds that while the two firms have worked together on this and other litigation, the association between Alioto & Alioto and the Gray firm does not warrant disqualification of the Alioto firm. In the court's view, the risk of disclosure of client confidences will be virtually eliminated by the disqualification of the Gray firm. That disqualification should also greatly reduce any appearance of impropriety. The record

does not warrant the extension of vicarious disqualification to another level.

In addition, the court will order the Alioto firm to return to the Gray firm all of the documents and information which it has obtained from Gray. The court recognizes that there may be questions regarding the effectiveness of, or the compliance with, this requirement. However, the Alioto firm must undertake good faith compliance, which should result in the purging of most of the "tainted" information, if any. If Haagen-Dazs and Pillsbury question the Alioto firm's compliance, or the effectiveness of this requirement, they can raise the issue by further motion at a later time.

## VII.

THEREFORE, IT IS ORDERED that:

(1) Mr. Franklin Jesse is disqualified from further representation of any party to this litigation;

(2) Gray, Plant, Mooty, Mooty & Bennett, are disqualified from further representation of any party to this litigation;

(3) The requested disqualification of Alioto & Alioto is denied;

(4) Alioto & Alioto will return to the Gray firm all of the information and documents which it has obtained from that firm;

(5) The case pending in Alameda Superior Court, No. H–107998–8, is not before this court, and this order is therefore not binding on the state court.

(6) While the court stated its intended rulings at a hearing on April 4, 1986, this order is effective as of this date.