**SECURITIES INVESTOR PROTECTION CORPORATION, et al., Plaintiffs,**

v.

**Seymour VIGMAN, et al., Defendants.**

**No. CV 83–4742 AWT.**

United States District Court,
C.D. California.

May 30, 1984.

Stephen R. Carley (on the motion for disqualification) Gerald E. Boltz, Charles R. Hartman, Uzzell S. Branson, III, Robert D.

**1360**

Donaldson, Rogers & Wells, Los Angeles, Cal., for Securities Investor Protection Corp.

C. Edward Simpson, Robert A. Graham, Jr., Jones, Bell, Simpson & Abbott, Los Angeles, Cal., for plaintiffs Eugene W. Bell, trustee for the liquidation of Joseph Sebag Inc. and John L. Britton, trustee for the liquidation of First State Securities Corp.

S. Thomas Pollack, Steve A. Marenberg, Irell & Manella, Los Angeles, Cal., Edward S. Wactlar, Blau, Kramer, Wactlar & Lieberman, P.C., Jericho, N.Y., for defendants Osrow Products Corp., Harold Osrow, Leonard Osrow and Richard Osrow.

Jack I. Samet, David H. Bramson, Julie B. Haupt, Buchalter, Nemer, Fields, Chrystie & Younger, Los Angeles, Cal., for defendants Frederick Dunn, Marjory A. Holmes and Robert G. Holmes, Jr.

Michael A. Oswald, Capretz & Kasdan, Irvine, Cal., for defendants Edward H. Garrity, Frankie Mae Garrity, Michael C. Garrity, Rodger W. Garrity, Steven J. Garrity, Gary L. Linza, Larry D. Linza, Ernest E. Redmond, Richard A. Taylor and Velma Shaw.

Michael A. Cohen, Newport Beach, Cal., for defendant George E. Talbot.

Sandor T. Boxer, Linda J. Bernhard, Coskey, Coskey & Boxer, Los Angeles, Cal., for defendant Intek Diversified, Inc. (Intercontinental Diamond).

Hugh Steven Wilson, G. Andrew Lundberg, Latham & Watkins, Los Angeles, Cal., for defendants Gordon H. McNeil and Isadore Diamond.

James W. Mercer, Jr., Jeanne E. Irving, Greenberg, Hennigan & Mercer, Beverly Hills, Cal., for defendants Magnetic Technologies Corp. (Bunnington Corp.).

Richard H. Critchlow, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, Miami, Fla., for defendants Stephen Allen Blumenthal, George W. Jordan and Lewis Leeds.

David L. Ross, Rudolph F. Aragon, Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, Miami, Fla., for defendant Creditbank.

William Nortman, Leonard Bloom, Guren, Merritt, Udell, Sogg & Cohen, Miami, Fla., for defendants Esther Blanchar, Elia Giusti (aka LEE GIUSTI).

Stephen V. Wilson, Hochman, Salkin & DeRoy, Beverly Hills, Cal., for defendants Ronald J. Speyer, Nettie Vigman and Seymour Vigman.

Steven Gourley, Feinstein & Gourley, Los Angeles, Cal., for defendants Jack A. Haber, Haberico, Inc. and Habers, Inc.

Craig B. Jorgensen, Steven P. Rice, Kindel & Anderson, Los Angeles, Cal., for defendant Aero Systems, Inc.

David B. Parker, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, Cal., for defendants Camille Diane Reno and Rex Richard Reno.

Herbert A. Bernhard, Stephen H. Marcus, Greenberg, Bernard, Weiss, Rosin & Fern, Los Angeles, Cal., William E. Taylor III, Richard P. McElroy, Blank, Rome, Cominsky, & McCauley, Philadelphia, Pa., for defendants Dash Industries, Inc., Jay Dash and Phillip Dash.

Rod R. McMahan, James R. Wimmer, M. Nicole Marcey, Lord, Bissell & Brook, Chicago, Ill., Jeffrey S. Kravitz, Lord, Bissell & Brook, Los Angeles, Cal., for defendants Carl Goldman and Marc Goldman.

Alan D. Bersin, Munger, Tolles & Rickershauser, Los Angeles, Cal., for defendant Thomas de Carlo.

Martin Glenn, O'Melveny & Myers, Los Angeles, Cal., John R. Bush, Bush, Ross, Gardner, Warner & Rudy, Tampa, Fla., for defendants Aerosonic Corp., Inc., Herbert J. Frank and David S. Goldman.

Marilyn E. Levine, Mitchell, Silberberg & Knupp, Los Angeles, Cal., Thomas G. Jackson, Judith S. Roth, Ira B. Rose, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Eugene C. Ferri, Jr.

Stanton L. Stein, Samuel R. Pryor, Stein & Kahan, Santa Monica, Cal., for defendants Delores Owens Cipparone (aka Dee

Cipparone), Carolina Mendez Lugo, Joseph A. Lugo, Jr. and Robert J. Mansell.

Kathryn A. Sackett, Virtue & Scheck, Newport Beach, Cal., for defendant Lawrence West.

Sheldon M. Jaffe, Los Angeles, Cal., for defendant Edward P. Prescott.

Harry Drooker, in pro. per.

Richard Galione, in pro. per.

Joel S. Fass, Colondy, Fass & Talenfeld, North Miami, Fla., for defendant Elliott I. Eiseman.

Eugene C. Berchin, Berchin & Berchin, Beverly Hills, Cal., Robert A. Freeman, David A. Freedman, Miami, Fla., for defendant Leo Vela.

Shelley Drooker Cohen, in pro. per.

Thomas L. Taylor III, Fenwick, Stone, Davis & West, Los Angeles, Cal., for defendant Richard Cotler.

Frank E. Merideth, Rodney E. Nelson, Loo, Merideth & McMillan, Los Angeles, Cal., for defendant Martin Blumenthal.

Howard J. Privett, Bill E. Schroeder, McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendants Jose Luis Calonge, Jorge Calonge, Francisco Martinez Celerio, JLC CIA Inversionista, S.A., Mobile Intern. Corp.

Mario Lamar, Lamar, Lamar & Associates, P.A., Coral Gables, Fla., for defendant Tula Corp. and Talingo Corp.

Robert Dameron, in pro. per.

## MEMORANDUM OPINION AND ORDER

TASHIMA, District Judge.

This is an action brought by the Securities Investor Protection Corporation ("SIPC") and the respective trustees for two broker-dealers in the process of liquidation under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.* The complaint names seventy-five individual and corporate defendants and alleges numerous violations of § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78a *et seq.*, and Rule 10b–5 promulgated thereunder, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), fraud and breaches of fiduciary duty under California common law. By a separate memorandum order filed concurrently herewith, the motions to dismiss of various defendants are disposed of. I address here, the motion of defendant Isadore Diamond, joined in by five other defendants, to disqualify SIPC's counsel.

### BACKGROUND

Gerald E. Boltz and Charles R. Hartman are members of the law firm of Rogers & Wells and counsel of record for plaintiff SIPC in this action. Both attorneys formerly were employed by the Securities and Exchange Commission ("SEC" or the "Commission"). Boltz was employed as an attorney by the SEC for approximately 20 years, from 1959 until 1979. From 1972 until 1979, he was Regional Administrator of the SEC's Los Angeles Regional Office. Hartman was employed as an attorney by the SEC for approximately 11 years, from 1969 to 1980. From 1972 until 1980, he was assigned to the SEC's Los Angeles Regional Office, where he held the position of regional counsel from 1976 to 1980.

During the early 1970s, two related proceedings were instituted by the SEC against, among others, certain of the defendants named in this action. The first was a Commission administrative proceeding brought by the SEC's Washington Office in March, 1971. *In the Matter of Newport Securities Corp., et al.,* Adm. Proceeding File No. 3–2869 (the "1971 administrative proceeding"). The second was a civil injunctive action filed in this court by the SEC's Los Angeles Regional Office. *SEC v. Newport Securities Corp., et al.,* No. CV 73–100 WMB (the "1973 civil action"). The gravamen of the complaint in that action was the alleged fraudulent manipulation of the common stock of DCS Financial Corporation ("DCS"). Although the scope of the responsibilities and actions of Boltz and Hartman in those proceedings is in dispute, it is uncontested that Boltz

signed the complaint and trial brief in the 1973 civil action and that Hartman appeared as trial counsel for the SEC in that action.

The complaint in the instant action, filed July 22, 1983, was signed by Boltz and lists Rogers· & Wells and, among others, Hartman as attorneys, for plaintiff SIPC. Like the 1973 civil action and the 1971 administrative proceeding, plaintiff alleges the manipulation of a number of securities. The instant action, however, alleges an extremely elaborate scheme, encompassing the manipulation of seven securities on the over-the-counter market, including the securities of Bunnington Corp. ("Bunnington"), the company into which DCS had merged. As stated, the complaint charges numerous violations of the anti-manipulative provisions of the Exchange Act and RICO, as well as other violations of law. Certain of the claimed violations are based on asserted securities manipulations which occurred prior to the 1971 administrative proceeding and the 1973 civil action.

Defendants seek to disqualify Boltz, Hartman and Rogers & Wells from further representing SIPC in this action on the ground that continued representation by these former government attorneys in a matter connected to their government work contravenes the ethical standards of the legal profession.

## I. THE APPLICABLE STANDARD OF PROFESSIONAL RESPONSIBILITY

Defendants contend that Boltz and Hartman's representation of SIPC in this action violates Rule 1.11(a) of the American Bar Association's ("ABA") recently adopted Model Rules of Professional Conduct (1983) ("Model Rules"). Rule 1.11(a) provides:

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.[1]

Since SIPC does not contend that Boltz and Hartman have been screened from participation in this action, disqualification of either of these attorneys would require that Rogers & Wells also be disqualified. Model Rule 1.11(a)(1).

██ The district court has primary responsibility for controlling the conduct of attorneys practicing before it. *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980). Although the ABA does not establish rules of law that are binding on this Court, it is the Court's prerogative to disqualify counsel based on contravention of the ABA Model Rules. *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey,* 722 F.2d 435 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 162, 78 L.Ed.2d 148 (1983) (former DR 9–101(B) and Canon 9 ["avoiding appearance of impropriety"] sufficient basis to disqualify former National Labor Relations Board attorney from representing union in private suit similar to one he had prosecuted for the Board); *In re Coordinated Pretrial Proceedings,* 658 F.2d 1355 (9th Cir.1981) (former Canon 9 can be sole basis of disqualification order). This is true, despite the fact that neither this Court's Local Rules nor the Rules of Professional Conduct of The State Bar of California ex-

---

**1.** Except for the provision allowing representation when "the appropriate government agency consents after consultation," Rule 1.11(a) is similar to former Disciplinary Rule ("DR") 9–101(B), which provided that "[a] lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." Model Code of Professional Responsibility DR 9–101(B) (1979). See also footnote 9, *ante.*

pressly refers to the ABA Model Rules. As the Ninth Circuit has recently stated:

> Despite the deletion in 1975 of a reference to the ABA Model Code in the Rules of Professional Conduct of the State Bar of California ... the California courts continue to rely on the Model Code in addressing issues not covered precisely by the Rules of Professional Conduct of the State Bar of California.

*Iacono Structural Eng'r*, 722 F.2d at 439–40 n. 6. *See, e.g., Chambers v. Superior Court*, 121 Cal.App.3d 893, 898–903, 175 Cal.Rptr. 575 (1981); *Chadwick v. Superior Court*, 106 Cal.App.3d 108, 116–18, 164 Cal.Rptr. 864 (1980); *Bruno v. Bell*, 91 Cal.App.3d 776, 787–88, 154 Cal.Rptr. 435 (1979). *But see People v. Ballard*, 104 Cal.App.3d 757, 761, 164 Cal.Rptr. 81 (1980) (dictum) ("conduct of California attorneys is governed by California Rules of Professional Conduct" not ABA Model Code).

■ Because California courts have consistently looked to the Model Code, the predecessor of the Model Rules, as a source of ethical principles governing the conduct of California lawyers, I conclude that Rule 1.11(a) is an appropriate standard to apply in this case. *See* Local Rule 2.5.1 (requiring lawyers to comply with "decisions of any court applicable" to "standards of professional conduct required of members of the State Bar of California"). As noted, Rule 1.11(a) is substantially similar to former DR 9–101(B). Thus, California attorneys are, or should be, apprised of the standard of responsibility encompassed by the rule, from decisions of California and federal courts applying former DR 9–101(B).[2]

■ SIPC contends that Rule 1.11(a) was meant to apply only to "switching sides" cases, that is, situations where a former government attorney seeks to represent a private litigant whose interests are adverse to the government. SIPC argues that such a limitation is supported by the rule's al-

lowance of an otherwise prohibited representation when "the appropriate government agency consents after consultation." I disagree. Nowhere in the Model Rules, the Comments, or the ABA draft proposals is there support for limiting Rule 1.11(a) to switching sides cases. Although there is no lengthy discussion of the "government consent" provision in the Comment accompanying Rule 1.11, the ABA has explained the provision as follows:

> The direct disqualification of a former government lawyer under Paragraph (A) may be waived by the former agency in proper circumstances. Waiver may be in the public interest. *See Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir.1976); *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir.1974).

ABA, Notes, Proposed Alternative Model Rules at 306 (May 30, 1981) ("1981 Draft Notes").

Neither *Woods* nor *General Motors* involved an attorney switching sides. In fact, the focus in both of these cases was not on whether or not an attorney had switched sides, but instead, was on avoiding the "appearance of impropriety." In *General Motors*, the City of New York brought an action against a bus manufacturer alleging an unlawful nationwide monopoly. One of the City's attorneys formerly had been employed by the Department of Justice and during that time had substantial responsibility in the investigatory and preparatory stages of a similar antitrust action against the same manufacturer. The court, in disqualifying the attorney from further representation of the City, noted that the purpose behind former Canon 9 and DR 9–101(B), as stated in ABA Formal Opinion No. 37 (1931), was to avoid:

> the manifest possibility ... [that a former government lawyer's] action as a public legal official might be influenced (or open to the charge that it had been

---

**2.** Although the ABA Model Rules were not adopted until Aug. 2, 1983, 11 days after this action was commenced, they are the appropriate standard against which to test the *continued*

representation of SIPC. Moreover, as the ensuing discussion will indicate, the outcome of the analysis under former Canon 9 and DR 9–101(B) would not differ.

influenced) by the hope of later being employed privately to *uphold* or *upset* what he had done.

501 F.2d at 649 (emphasis in the original). The court further recognized that its responsibility was:

> to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel ... and the need to maintain the highest ethical standards of professional responsibility. This balance is essential if the public's trust in the integrity of the Bar is to be preserved.

*Id., quoting Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 564–65 (2d Cir.1973). The disqualification was not based on actual impropriety, but in order to avoid the appearance of impropriety and to safeguard the "public's trust." *Id.*

In *Woods*, the Fifth Circuit found no such danger of public mistrust. There, a former naval reserve attorney, during service, had investigated a securities fraud allegedly perpetrated on returning ex-prisoners of war ("POWs") on behalf of the POWs. He later represented the POWs in a private fraud action. The district court's disqualification order was reversed because, the court concluded, the attorney's conduct could not conceivably impugn the public's trust in the Navy or the legal profession. This was due, in large part, to the fact that

> as a legal assistance officer ... [the attorney] did not possess any investigative authority beyond that available to a private lawyer.... Neither is there any allegation that [the attorney] ever held himself out to be an investigating officer acting on behalf of the United States

Navy or as having any special governmental authority.

537 F.2d at 817.

The 1981 Draft Notes' citation to *Woods* and *General Motors* makes is apparent that the drafters of the Model Rules did not intend that Rule 1.11(a) be limited to switching sides cases. In fact, the 1981 Draft Notes, at 303, states directly that "a former government lawyer may be prohibited from representing private parties in a related matter even though it is not adverse to the government," citing *Woods*. Thus, the ABA considered that in certain circumstances, such as presented in *Woods*, a former government attorney's representation of a private client may be in the public interest. This is the reason why Rule 1.11(a) permits a discretionary waiver by the former agency of disqualification in such a situation. SIPC's contention that the "government consent" provision was meant to limit the application of Rule 1.11(a) to switching sides cases is contrary to the drafters' reliance on *Woods* and *General Motors* and, therefore, must be rejected. I now turn to an examination of the substantive aspects of the rule.[3]

## II. APPLICATION OF RULE 1.11(a)

### A. *Agency Consent*

■ As indicated, Rule 1.11(a) appears to allow an otherwise prohibited representation by a former government attorney when "the appropriate government agency consents after consultation." When, at the hearing on the motion, the Court confirmed that agency consent had not been sought, SIPC was directed to consult with the Commission to ascertain whether it would con-

---

**3.** SIPC argues that this motion is governed by Model Rule 1.11(b), rather than Rule 1.11(a). Rule 1.11(b) provides:

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm

with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom. Possible disqualification under this rule is independent of and in addition to any basis for disqualification under Rule 1.11(a). Because I conclude that disqualification is required under Rule 1.11(a), I do not reach the question of whether Rule 1.11(b) also applies.

sent to the continued representation of SIPC by Boltz and Hartman. The SEC was then contacted by Rogers & Wells, as well as a number of other counsel in this action. The Commission has declined to give its consent, stating:

> [T]he Commission believes that as a general matter, a policy of waiving the personal disqualification of former Commission lawyers to permit them to participate in the matters which they handled while on the staff could undermine the public's confidence in the activities of the Commission's lawyers. After reviewing the factors relevant to this case, the Commission sees nothing unique in this situation which would warrant deviating from that general principle. Therefore, the Commission has determined that it would not waive any disqualification personal to Messrs. Boltz and Hartman, pursuant to Rule 1.11(a).[4]

The Commission's declination to waive personal disqualification in this case must be accepted as that agency's discretionary determination, as contemplated by the rule, that this is not a situation where waiver of disqualification would be in the public interest. However, it remains to be considered whether the predicate requirements for the application of Rule 1.11(a) are here present.[5]

**4.** The Commission's determination was communicated to counsel in a letter signed by its General Counsel. A copy of that letter, dated February 28, 1984, is appended hereto.

**5.** As explained in the SEC's letter, the Commission has "made no determination" that this action and the 1973 civil action "are the same particular matter and that Messrs. Boltz and Hartman had personal and substantial responsibility for both matters."

**6.** In the accompanying Memorandum Order on Motions to Dismiss, the sufficiency of the RICO claim is upheld on defendants Rule 12(b)(6) motion. "Fraud in the sale of securities," 18 U.S.C. § 1961(1), is alleged as the underlying, predicate offenses. The requisite injury "by reason of a violation of section 1962," 18 U.S.C. § 1964(c), is adequately alleged. In addition to injury to the investing public from the securities fraud and manipulation, it is alleged that the

**B.** *Same Matter*

■ Although the ABA Model Rules do not define the term "matter" as used in Rule 1.11(a), it can be said that a matter includes a "discrete, identifiable transaction or conduct involving a particular situation and specific parties." *See* ABA Formal Opinion No. 342 (1975). Opinion No. 342 provides the following examples:

> The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter.... [T]he same "matter" is not involved [when] ... there is lacking the discrete, identifiable transaction or conduct involving a particular situation and specific parties.

■ SIPC contends that, under this definition, the 1973 civil action is not the same matter as the instant action. However, examination of the instant complaint belies this contention. In paragraph 200 of the complaint, in support of the first claim for violation of RICO,[6] plaintiffs allege:

> that at various times prior to November, 1967, *and thereafter, Vigman ... and Diamond* participated in a fraudulent scheme to manipulate the prices of various securities, including ... *DCS Corporation (a corporation subsequently merged with Bunnington) ... Said*

pattern of racketeering activity "also resulted in anti-competitive control and domination by the RICO Defendants over Sebag and FSSC [the broker-dealers now in SIPA liquidation], resulting in the financial destruction and liquidation of Sebag and FSSC." (Comp. ¶ 221.) This is sufficient to state a claim for injury to business or property by reason of a violation of 18 U.S.C. § 1962(c). *See Schacht v. Brown*, 711 F.2d 1343, 1358–59 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983); *Harper v. New Japan Sec. Int'l, Inc.*, 545 F.Supp. 1002 (C.D.Cal.1982).

That a different theory is here alleged, *i.e.*, RICO, and the securities fraud and manipulation are predicate offenses of an alleged racketeering violation, does not make this not "in connection with" the prior "matter." Moreover, the second claim directly pleads a violation of § 10(b) of the Exchange Act for the same violations. While that claim has been dismissed, leave to amend has been granted.

*conduct violated Section 10(b) of the Exchange Act and Rule 10b–5.*

(Emphasis added.) In paragraph 211 of the complaint, plaintiffs further allege:

that between November, 1967 and January, 1971, in furtherance of the racketeering enterprise, Vigman, Diamond, and others engaged in a scheme to defraud the public in violation of the Securities Act, the Exchange Act and Rule 10b–5. This scheme involved the placement of unregistered securities into the marketplace and the subsequent manipulation of the price of those securities for the benefit of the RICO Defendants.

The complaint (¶¶ 208, 211 & 212) also alleges that defendant Vigman, despite being barred from the securities business on November 1, 1967, "continued to exercise control over Newport Securities Corp.", as well as a number issuers, including Bunnington, and that the racketeering enterprise was carried out through, *inter alia*, Newport Securities.

It must be remembered that the subject of the 1973 civil action was the alleged manipulation of DCS stock by, among others, Vigman and Diamond (defendants here) in violation of, *inter alia*, § 10(b) of the Exchange Act and Rule 10b–5. Although the subject of the 1973 civil action largely was alleged manipulations occurring in 1972, the complaint in the 1973 civil action (¶ 17) also alleged fraudulent manipulation of securities "since about September 15, 1970."

It is evident that paragraphs 200, 208, 211 and 212 of the instant complaint refer to the same matter that was the subject of the 1973 civil action. Although this is not a situation where the subsequent complaint was "lifted ad haec verba" from the SEC complaint, *General Motors,* 501 F.2d at 650, I find that a discrete series of transactions involving a specific situation and specific parties in the 1973 civil action is part and parcel of a subsequent, broader allegation of widespread securities fraud and racketeering in the case at bench. The essence of the complaint here is that, since 1967, Vigman, Diamond and others have engaged in a sophisticated conspiracy to manipulate the price of securities. Thus, the complaint includes among its allegations, the alleged manipulation of the price of DCS stock by, among others, Diamond and Vigman, which allegation was the precise subject of the 1973 civil action. Therefore, I find that Boltz and Hartman are representing SIPC "in connection with a matter" which the SEC prosecuted in the 1973 civil action, within the meaning of Rule 1.11(a).[7]

### C. *Personal and Substantial Participation*

■ SIPC argues that neither Boltz nor Hartman personally and substantially participated in the 1973 civil action. However, it is uncontroverted that Boltz signed both the complaint and the trial brief in that action. Although in his declaration Boltz states that his signatures "merely reflect a general SEC practice and policy that a Regional Administrator should personally sign the initial complaint in any action filed by that office," Boltz Decl. at ¶ 10, his argument ignores that plain requirement of F.R.Civ.P. 11. At the time Boltz signed the complaint and trial brief, Rule 11 provided that "[t]he signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it."[8] The Ninth Circuit has interpreted this language to require an attorney, before filing a civil action, "to make an investigation to ascertain that it has at least some merit, and further to ascertain that the damages sought appear to bear a reasonable relation to the injuries actually sustained." *Rhinehart v. Stauffer,* 638 F.2d 1169, 1171 (9th Cir.1979). *See also Kinee v. Abraham Lincoln Sav. & Loan Ass'n,* 365 F.Supp. 975 (E.D.Pa.1973).

---

7. Because of this finding, it is unnecessary to and I do not reach the question of whether this action also involves the same matter as the 1971 administrative proceeding.

8. F.R.Civ.P. 11 was amended, effective August 1, 1983.

Therefore, when Boltz, as Regional Administrator, signed the complaint and trial brief, he assumed, as a matter of law, the personal and substantial responsibility of ensuring that there existed good ground to support the SEC's case and that it had, at least, some merit.[9] The assumption and proper discharge of that responsibility required his personal and substantial participation in the action. That Boltz had such responsibility under law is further indicated by former Rule 11's provision that an attorney who violated the rule "may be subjected to appropriate disciplinary action." I, thus, find that Boltz had personal and substantial responsibility over and participation in the 1973 civil action within the meaning of Rule 1.11(a).[10] *Cf. Telos, Inc. v. Hawaiian Tel. Co.*, 397 F.Supp. 1314, 1316 n. 11 (D.Haw.1975) ("Signing a complaint, is, ... by itself, except in rare circumstances, the exercise of substantial responsibility" under former DR 9–101(B).).

With respect to Hartman, it is not contested that he appeared at the trial as counsel of record on each day of the three-day trial in the 1973 civil action. However, Hartman contends that his role at the trial merely was to supervise an attorney-colleague at the SEC, who had no prior trial experience. Hartman further declares that all of the legal work in the 1973 civil action, "including both the actual preparation and the trial itself, was performed by" the other trial attorney. Hartman Decl. at ¶ 12.

Be that as it may, it is unlikely that an experienced attorney would or could effectively and properly supervise an inexperienced colleague without familiarizing himself with the facts of the case and the applicable law. To this end, Hartman no doubt had access to records, both public and confidential, relating to the case. It is difficult to conceive how an experienced attorney could carry out the type of supervisory role assigned to Hartman without becoming familiar with the evidence to be presented both by and against the SEC and conferring with and advising his less-experienced colleague during the course of the three-day trial. Therefore, I find that Hartman also had personal and substantial responsibility over and participation in the 1973 civil action within the meaning of Rule 1.11(a).

## III. CONCLUSION

Because courts have differed as to whether the somewhat subjective standard of the "appearance of impropriety" under former Canon 9 and DR 9–101 was an appropriate one to guide the conduct of lawyers, Model Rule 1.11(a) "sets forth more specifically the circumstances in which concern for public confidence in government necessitates disqualification of a government lawyer." 1981 Draft Notes at 304. The concerns addressed, however, remain the same. The specific circumstances requiring disqualification under Rule 1.11(a) have been met here. Because I find that Boltz and Hartman are representing a private client in connection with a matter in which both of them participated personally and substantially while em-

---

**9.** One reason the Model Rule employs the term "participated personally and substantially" is because the term "substantial responsibility" used in former DR 9–101(B), "could disqualify the former head of a large governmental agency from private employment with respect to any matter arising during his tenure. *See Cleveland v. Cleveland Elec. Illum. Co.*, 440 F.Supp. 193 (N.D.Ohio 1977); ABA Formal Opinion 342 (1975) [other citations omitted]." Boltz's disqualification here is not based on his "substantial responsibility" as Regional Administrator of the SEC's Los Angeles Regional Office, but on his personal substantial responsibility and participation in the 1973 civil action as an attorney who, by signing the complaint and trial brief and other actions personally participated sub-

stantially in the 1973 civil action. An attorney who personally signs the pleadings in an action is not immunized from Rule 11's imposition of personal responsibility because he also happens to be the head of a governmental office.

**10.** Further evidence of Boltz's personal participation in the 1973 civil action is found in the response of the SEC staff attorney who deposed defendant Diamond to Diamond's request for a copy of his deposition transcript: "Mr. Boltz has asked me to assure you on behalf of the [SEC] staff" that such a copy would be provided. (Depo. of Diamond, at 107 (Dec. 5, 1972), Ex. C to Memo in Supp.)

ployed by the SEC, and because the Commission has declined to consent to such representation, these attorneys and Rogers & Wells must be disqualified from further representation of SIPC in this action. Of course, this ruling is intended in no way to suggest any actual wrongdoing on the part of the attorneys involved or their law firm. Rather, this ruling is intended to effectuate the prophylactic purpose of Rule 1.11(a). *See General Motors Corp.,* 501 F.2d at 649.

ORDER

IT IS ORDERED that Gerald E. Boltz, Charles E. Hartman and the law firm of Rogers & Wells are forthwith disqualified from further representing plaintiff Securities Investor Protection Corporation in this action. SIPC is granted 30 days within which to engage new counsel and to substitute such counsel as its attorneys of record. All proceedings in this action are stayed until such new counsel are substituted in or for 30 days, whichever is the shorter period. Until substitution, Rogers & Wells remains as attorney or record and is authorized to attend to any required "housekeeping" or administrative matters.

APPENDIX

SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, D.C. 20549

February 28, 1984

Stephen R. Carley, Esq.

Rogers & Wells

261 South Figueroa Street

Los Angeles, California 90012

Re: *Securities Investor Protection Corp. et al. v. Vigman et al.* Case No. 83–4742 AWT (C.D.Cal. July 22, 1983).

Dear Mr. Carley:

The Commission has authorized me to inform you that, after considering your request that it waive any personal disqualification of Gerald E. Boltz and Charles R. Hartman, pursuant to Rule 1.11(a) of the American Bar Association's Model Rules of Professional Conduct, to permit them to continue their legal representation of the Securities Investor Protection Corporation, it has declined to do so. I would appreciate your conveying the Commission's determination to the court. By copy of this letter, I am notifying the proponents of the disqualification motion, and the other parties to this litigation, of the Commission's decision.

After a hearing on January 9, 1984, on a motion to disqualify Messrs. Boltz and Hartman, and Rogers & Wells as counsel for SIPC, filed by Isadore Diamond and joined in by Magnetic Technologies, Inc., in the above-captioned case, Judge A. Wallace Tashima directed counsel for SIPC to consult with the Securities and Exchange Commission to determine whether the Commission would, pursuant to Rule 1.11(a), waive any personal disqualification of Messrs. Boltz and Hartman. Subsequently, by letter dated January 10, 1984, you requested that the Commission consent to such a waiver to permit Messrs. Boltz and Hartman to continue their legal representation of SIPC.

In reviewing this matter, the Commission has considered only the question of waiver of disqualification personal to Messrs. Boltz and Hartman, and has assumed for purposes of a response to the court's inquiry that the predicate requirements for the applicability of Model Rule 1.11(a), *i.e.,* that the captioned action and the earlier *SEC v. Newport Securities Inc.* action are the same particular matter and that Messrs. Boltz and Hartman had personal and substantial responsibility for both matters. It has, therefore, made no determinations with respect to those issues.

The question presented in connection with this request is one of first impression for the Commission. As you know, the Model Rules have only been recently adopted. Prior American Bar Association restrictions on post-government employment included no proviso permitting consent by the former government client to a

representation which was prohibited by existing ethical rules.*

A major premise underlying the disqualification rule applicable to former government employees is the recognition that lawyers for the government have the opportunity to abuse their governmental positions by conducting the government's business in a manner designed to advance their post-government careers. Therefore, a rule which prohibits former government lawyers from participating, after leaving government service, in matters for which they had responsibility while government employees discourages the thought of future employment from intruding in decisionmaking by the government lawyer. Of equal importance, such a rule serves to maintain public confidence in the objectivity of government lawyers, and that their conduct, on the public's behalf, is not motivated by self-interest.

The Commission recognizes that the participation of Messrs. Boltz and Hartman in the present action will not, in a narrow sense, harm the Commission. Moreover, the Commission has no reason to believe that any actions which Messrs. Boltz and Hartman took while in the Commission's employ were motivated by considerations related to their post-government careers. Nonetheless, the Commission believes that as a general matter, a policy of waiving the personal disqualification of former Commission lawyers to permit them to participate in matters which they handled while on the staff could undermine the public's confidence in the activities of the Commission's lawyers. After reviewing the factors relevant to this case, the Commission sees nothing unique in this situation which would warrant deviating from that general principle. Therefore, the Commission has determined that it would not waive any disqualification personal to Messrs. Boltz and Hartman, pursuant to Rule 1.11(a).

* While Model Rule 1.11(a) permits a government agency to waive the personal disqualification of its former lawyers, 18 U.S.C. 207, the federal post-employment statute would, if applicable, presumably eliminate any such discretionary action by a federal agency. While authoritative interpretations of Section 207 are the province of the Office of Government Ethics and the Department of Justice, it appears that Section 207 does not apply in this instance.

Very truly yours,
/s/ Daniel L. Goelzer/ms
Daniel L. Goelzer
General Counsel

Attachment

cc: Parties on Attached List