RICHARD A. AND NANCY J. KOSBY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; DENNIS H. BRADY AND MARCEL F. BRADY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Kosby v. Commissioner
Docket Nos. 15266-88, 24516-88
United States Tax Court
T.C. Memo 1992-541; 1992 Tax Ct. Memo LEXIS 562; 64 T.C.M. (CCH) 733; September 15, 1992, Filed *562 Respondent's motion will be granted. For Petitioners: James J. Everett, in docket No. 15266-88. For Petitioners: Matthew S. Dana, in docket No. 24516-88. For Respondent: S. Mark Barnes. WHALEN
WHALEN
MEMORANDUM FINDINGS OF FACT AND OPINION WHALEN, Judge: This case is before the Court to decide respondent's motion to disqualify petitioners' counsel. We must decide whether the attorney for petitioners in the case at docket No. 15266-88, James J. Everett, should be disqualified on the ground that his representation of petitioners in these proceedings violates rule 1.11(a) of the Model Rules of Professional Conduct of the American Bar Association. All rule references contained herein are to the Model Rules of Professional Conduct of the American Bar Association, unless stated otherwise. As a preliminary matter, we note that this case is consolidated with a case involving Dennis H. Brady and Marcel F. Brady, docket No. 24516-88. The Bradys are represented by a different attorney and respondent's motion to disqualify does not pertain to their case. When we use the term "petitioners" in this opinion, we refer to Richard A. and Nancy J. Kosby. FINDINGS OF FACT Petitioners' attorney, *563 James J. Everett, Esquire, is engaged in the private practice of law in Phoenix, Arizona. He is a member of the bar of the State of Arizona and is certified by that bar as a tax specialist. He is also a member of the bar of the State of Texas and the bar of this Court. Before entering private practice, from February or August 1980 through July 1987, Mr. Everett was employed by the Office of Chief Counsel of the Internal Revenue Service as a docket attorney. He was assigned to the Office of District Counsel, Phoenix, Arizona. In 1986, Mr. Everett was designated to act as "shelter coordinator" for the Queen Creek Pecans tax shelter. His responsibilities as shelter coordinator included representing the Commissioner as counsel of record in cases brought in this Court by persons who had invested in the Queen Creek Pecans shelter, and coordinating the trial or settlement of those cases. At the time Mr. Everett became shelter coordinator, the National Office of the Internal Revenue Service had identified the Queen Creek Pecans shelter as a tax shelter project. The Queen Creek Pecans shelter had been promoted by an attorney, Van C. Bethancourt, Esquire, and a certified public accountant, *564 Mr. Tory Lofgreen. They had purchased approximately 300 acres of land located in Queen Creek, Arizona, which were used as a pecan orchard, and had divided it into four units, Queen Creek Pecans I through IV. They sold interests in the units to investors who claimed depreciation and investment tax credit on the portion of the purchase price allocated to the pecan trees and associated improvements to the land. In the Commissioner's view, the depreciation deductions and investment tax credits claimed by investors in the shelter were too high. This was accomplished, according to the Commissioner, by allocating too much of the purchase price to depreciable assets, the pecan trees and associated improvements, and by assigning recovery periods to those assets which were too short. As shelter coordinator, Mr. Everett acted as the lead docket attorney in, at least, three cases in this Court, involving the Queen Creek Pecans shelter, Tyree v. Commissioner, docket No. 5199-85, Franzoy v. Commissioner, docket No. 30502-86, and Corey v. Commissioner, docket No. 30503-86. The first case, Tyree, involved a taxpayer who claimed to have acquired a 15-percent interest in Queen *565 Creek Pecans I in 1980, and 10-percent interests in Queen Creek Pecans III and IV in 1981. He claimed losses and investment tax credits for taxable years 1980 through 1982, based upon his purchase of those interests. At the center of the dispute was the taxpayer's allocation of the purchase price between the pecan trees and the land on which they were planted. After the Tyree case was assigned to Mr. Everett on September 2, 1986, he undertook to prepare the case for trial which was scheduled to take place during the Court's March 2, 1987, trial session in Phoenix, Arizona. Among other things, he reviewed an appraisal of the value of the land and the pecan trees forming a part of the shelter which had been prepared by an engineer employed by the IRS, Ms. Jeanne Orendac. On January 15, 1987, Mr. Everett filed a status report with the Court in which he represented that the case would probably have to be tried and he estimated that 12 hours of trial time would be required. On January 23, 1987, he requested the assistance of an engineer employed by the Internal Revenue Service to assist him in preparing the case for trial and to appraise the subject land and trees. He also requested *566 the assistance of an experienced revenue agent to assist him in preparing the case for trial. On February 9, 1987, he confirmed that an appraiser, Mr. Dave Dalton of Phoenix District Office, had been assigned to the case. On February 13, 1987, Mr. Everett submitted to the Court the expert report of Mr. Dave Dalton, as required under Rule 143(f)(1), Tax Court Rules of Practice and Procedure.
Mr. Everett also undertook to prepare subpoenas duces tecum and on February 13, 1987, he took steps to have subpoenas served on one of the promoters, Van C. Bethancourt, Esquire, and on a realtor, Mr. Carl Sandberg. On the same day, he wrote a letter to the taxpayers' attorney enclosing certain documents for use at trial and asking to meet to discuss a stipulation. Mr. Everett filed a trial memorandum with the Court on behalf of the Commissioner. The trial memorandum enumerates four issues, one of which is the following: 1) Whether the petitioners are entitled to Schedule F losses and credits claimed for the years at issue as purportedly relating to investment in the promotion Queen Creek Pecan I, III and IV. The trial memorandum contains the following discussion which is pertinent *567 to the above issue: As to the Queen Creek Pecans promotions, it is respondent's position that the petitioner has a three-fold burden of proof: 1) the petitioners must establish that they acquired title to the subject property and, 2) must prove that the price they paid for the subject property was a true fair market value and not inflated merely for tax purposes, and 3) that the allocation of purchase price to acres and pecan trees/fixtures is correct. EVIDENTIARY PROBLEMS: Introduction into evidence of the numerous documents involved in the Queen Creek Pecans promotions. Some documents appear to have been "corrected" or, perhaps, altered. The Tyree case was settled without trial. Mr. Everett negotiated the settlement with the taxpayers' attorney and drafted a stipulation of settlement and a decision document, which were submitted to the Court. On July 14, 1987, he also prepared a Counsel Settlement Memorandum concerning the Tyree case, which sets forth the basis for the settlement. That memorandum makes reference to a meeting which Mr. Everett attended with a number of individuals, including Mr. Bethancourt who purported to represent most of the investors. Mr. *568 Everett's settlement was approved and became the standard for settling cases involving the Queen Creek Pecans tax shelter. Petitioners purchased their interest in Queen Creek Pecans I during 1981. Sometime later, in 1982 or 1983, they sold their interest to a partnership, Marcos Investments, Ltd., composed of, at least, three partners. Two of the partners, Messrs. Franzoy and Corey, are the taxpayers who filed the other two cases mentioned above, Franzoy v. Commissioner and Corey v. Commissioner. Mr. Everett also represented the Commissioner in both of those cases. He drafted the Commissioner's answers and filed them with the Court on September 4, 1986. In each case, the Commissioner had computed a tax deficiency in the taxpayer's income tax for 1982 by disallowing the taxpayer's share of a loss from Marcos Investment, Ltd., the partnership which had purchased petitioner's interest in Queen Creek Pecans I. The notices of deficiency in those cases did not raise an issue concerning the timing of the Kosbys' sale to Marcos Investment, Ltd., that is, whether the sale took place in 1982 or 1983. However, shortly before the scheduled trial date of those cases, the Appeals *569 officer discussed that issue with the attorney for Messrs. Franzoy and Corey. It is not clear whether Mr. Everett was employed by District Counsel at the time of that discussion. The third partner in Marcos Investments, Ltd., Mr. Dennis H. Brady, is the taxpayer in the case at docket No. 24516-88, which is consolidated with the subject case. One of the issues in the Brady case is whether Mr. Kosby sold his interest in Queen Creek Pecans to Marcos Investments, Ltd., during 1982 or 1983. The taxpayers in Brady v. Commissioner take the position that the sale took place in 1982. Petitioners take the position in their case that the sale took place in 1983. Respondent's notice of deficiency to petitioners makes five adjustments to the tax benefits claimed by petitioners for 1981 and 1982 on the basis of their purchase of an interest in Queen Creek Pecans I. Those adjustments are the following: First, respondent reduced the depreciation claimed for both years on the ground that the allocation of the purchase price to depreciable assets was too high, and the recovery periods assigned to the depreciable assets were too short. Second, respondent disallowed a deduction of $ *570 12,000 claimed for 1981 as "grove management expense" on the ground that it was a capital expenditure or a commission paid in connection with the purchase of the pecan grove. Third, respondent determined that petitioners sold their interest in Queen Creek Pecans during 1982, rather than during 1983, as they claim, and respondent revised the character of the gain reported, from capital to ordinary. Fourth, respondent determined that the portion of the purchase price for petitioners' interest in the pecan grove which qualifies for investment tax credit in 1981 was lower than the amount reported on petitioners' return. Finally, based upon respondent's determination that petitioners sold the pecan grove during 1982, rather than during 1983, respondent further determined that petitioners must recapture a portion of the investment tax credit allowed for 1981. Mr. Everett was retained by petitioners after the notice of deficiency was issued to them, and he filed the petition in the instant case on their behalf. The petition takes issue with respondent's determinations that the depreciation and grove management expense deductions are not allowed, that petitioners' sale of his pecan grove *571 to Marcos Investment, Ltd., took place in 1982, and that investment tax credit should be reduced. During his preparation of the instant case, Mr. Everett discussed the case with respondent's Appeals officer, Mr. Stephen Sein, on a number of occasions. Most of their discussions involved the timing of petitioners' sale of their interest in the pecan grove and the deductibility of the grove management expense. However, they briefly discussed the relationship of petitioner's case to the Queen Creek Pecans shelter and the allocation issue, described above. Mr. Everett made it clear that petitioners were willing to settle the allocation and recovery periods issues on the same terms offered to other investors in the tax shelter. During one meeting, Mr. Everett and Mr. Wexler met with respondent's attorney, Steve Waller, Esquire, and the Appeals officer. The participants at the meeting generally understood that the instant case involves Queen Creek Pecans shelter issues. Mr. Everett did not disclose, during or after that meeting, that he had participated in the Queen Creek Pecans cases as a Government attorney. Mr. Everett's prior involvement with the Queen Creek Pecans cases was *572 brought to light after one or more employees of the District Counsel's office in Phoenix mentioned to respondent's attorney in the instant case, S. Mark Barnes, Esquire, that Mr. Everett may have been assigned some citrus or pecan shelters, similar to the shelter at issue in the present case, when he was a Government attorney. Mr. Barnes reviewed closed files in the Phoenix District Counsel's Office and discovered that Mr. Everett had been respondent's attorney in the Tyree case. Mr. Barnes immediately reported his findings to the District Counsel, Mr. Roger Rhodes, and to the Assistant District Counsel, Mr. David W. Otto. After additional investigation confirmed that Mr. Everett was the Commissioner's docket attorney in the Tyree case, Mr. Otto telephoned Mr. Everett and told him that his representation of petitioners was in violation of rule 1.11. OPINION Rule 201(a) of the Tax Court Rules of Practice and Procedure requires practitioners before this Court to carry on their practice in accordance with the letter and spirit of the Model Rules of Professional Conduct of the American Bar Association. One of those rules, rule 1.11(a), provides as follows: (a) Except as *573 law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. * * * The Commissioner argues that Mr. Everett's representation of petitioners violates rule 1.11(a) and that Mr. Everett should be disqualified from further representing petitioners in these proceedings. As movant, the Commissioner bears the burden of proving that Mr. Everett's representation violates rule 1.11(a). Accordingly, the Commissioner must prove: (1) That Mr. Everett had been a public officer or employee and now represents a private client; (2) that his representation of petitioners involves the same matter in which he had previously participated as a Government attorney; (3) that his prior participation in the matter as a Government attorney was both personal and substantial; (4) that the appropriate Government agency has not consented to the representation; and (5) that no other law expressly permits the representation. The parties agree that Mr. Everett was a public officer or employee and now *574 represents petitioners who are private clients, that the Government does not consent to his representation of petitioners, and that there is no other law that permits the representation. However, the parties do not agree about whether Mr. Everett's representation of petitioners involves the same "matter", or whether Mr. Everett's participation in the matter as a Government attorney was "personal and substantial". Same "Matter"
At the outset, it is useful to compare rule 1.11(a) with rule 1.9(a) and (b). As mentioned above, rule 1.11(a) prohibits a lawyer from representing a private client in connection with a "matter" in which the lawyer participated as a public official or employee. By contrast, rule 1.9(a) prohibits a lawyer from representing a person "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client". Rule 1.9(b) uses the same language in describing a conflict of interest with the clients of a lawyer's former firm. See also rule 1.10. Thus, rule 1.11(a) applies to a matter only if it is the same as the lawyer's prior representation, whereas rule 1.9(a) and (b) may apply if it *575 is "a substantially related matter". In that respect, rule 1.11 is more narrow than rule 1.9(a) and (b). Rule 1.11(a), however, does not require the interests of the private client to be "materially adverse to the interests of the former client", i.e., the governmental agency, whereas rule 1.9(a) and (b) do. In that respect, rule 1.11 is somewhat broader than rule 1.9(a) and (b). For the most part, these differences are due to the different purposes served by each rule. The purpose of rule 1.9 is to assure that the confidentiality and loyalty owed to the client is not compromised. See comment to rule 1.9. The purpose of rule 1.11 is to prevent a lawyer from exploiting public office for the advantage of a private client. See comment to rule 1.11. Rule 1.11(d) provides that the term "matter", as used in the Model Rules of Professional Conduct, includes: (1) any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties * * * ABA Committee on Professional Ethics, Formal Opinion 342, 62 A.B.A. J. 517, 519 (1976), *576 commented on the term "matter", as used by the predecessor of rule 1.11(a), [1] as follows: Although a precise definition of "matter" as used in the disciplinary rule is difficult to formulate, the term seems to contemplate a discrete and isolatable transaction or set of transactions between identifiable parties. Perhaps the scope of the term "matter" may be indicated by examples. The same lawsuit or litigation is the same matter. The same issue of fact involving the same parties and the same situation or conduct is the same matter. * * * [Fn. refs. omitted]. As the above suggests, a "matter" which forms the subject of an attorney's representation of a private client is the same as the "matter" in which he or she participated as a Government attorney when it involves the same transaction or set of transactions between identifiable parties. See also General Motors Corp. v. City of New York, 501 F.2d 639, 651 (2d Cir. 1974); Securities Investor Protection Corp. v. Vigman, 587 F. Supp. 1358, 1365-1366 (C.D. Cal. 1984); Flego v. Philips, Appel & Walden, Inc., 514 F. Supp. 1178, 1182-1183 (D N.J. 1981); see generally Wolfram, *577 Modern Legal Ethics 471-473 (1986).
In this case, Mr. Everett participated in litigation involving the Queen Creek Pecans shelter as the Commissioner's docket attorney in the Tyree, Franzoy, and Corey cases. He also coordinated the positions which the Commissioner took in cases involving that shelter, as shelter coordinator. Thus, as a Government attorney, Mr. Everett was called upon to formulate and to implement the Government's litigating position in this Court regarding the deductions and credits claimed by persons who had invested in the Queen Creek Pecans shelter. That representation involved an inquiry into transactions between the promoters of the Queen Creek Pecans shelter, Messrs. Bethancourt and Lofgreen, and all *578 of the investors in the shelter, including Messrs. Tyree, Franzoy, and Corey, on the basis of which the investors claimed to be entitled to depreciation deductions and investment tax credits. The notice of deficiency which is at issue in the instant case adjusts the deductions and credits claimed by petitioners based upon their investment in Queen Creek Pecans I. The validity of those adjustments requires an analysis of the same transactions as were involved in the Tyree, Franzoy, and Corey cases. The instant case involves the exact same shelter, the same taxable year and, thus, the same "discrete and isolatable transaction or set of transactions between identifiable parties" as was involved in the Tyree, Franzoy, and Corey cases. Accordingly, Mr. Everett's representation of petitioners involves the same "matter" as those cases. Petitioners take the position that the instant case does not involve the same "matter". They argue that this is true because "there are only two issues for trial, neither of which is related to the shelter adjustments", the timing of petitioners' sale of their interest in the shelter and the deductibility of the grove management *579 fee. They also argue "that the interests of the petitioners are [not] materially adverse to the interest of the Government." Finally, they argue that there is no evidence that Mr. Everett "has used information gathered while employed by the Government to the disadvantage of the Government" and they point out that the Government has offered to settle the shelter issues in this case on the same terms offered to numerous other taxpayers. We are not persuaded by any of these arguments. First, we do not accept petitioners' assertion that the two issues for trial in this case are not related to the "shelter adjustments" which were involved in the Tyree, Franzoy, and Corey cases. To the contrary, both matters for trial in this case, the grove management fee and the timing of petitioners' sale of their interest, are directly related to the Queens Creek Pecans shelter and form a part of those transactions. Petitioners paid the grove management fee to the promoter of the shelter and, in this case, the fee is closely connected to the underlying transactions which were at issue in the Tyree, Franzoy, and Corey cases. Similarly, petitioners sold their interest in *580 Queen Creek Pecans I to Marcos Investments, Ltd., and two of the partners of that partnership were the taxpayers in the Franzoy and Corey cases. Thus, the facts underlying both the Franzoy and Corey cases, involving petitioners' sale of their interest in the shelter, are the same facts at issue in the instant proceeding. We note that before the Franzoy and Corey cases were settled, the Commissioner's appeals officer discussed with the taxpayers' attorney the timing of the sale of petitioners' interest. In addition, Mr. Everett's trial memorandum in the Tyree case sets forth the Commissioner's position that "petitioners must establish that they acquired title to the subject property". More importantly, we disagree with the proposition, implicit in petitioners' argument, that only issues "for trial" are taken into account in determining whether this suit involves the same "matter" as the Tyree, Franzoy, and Corey cases. That proposition is directly contrary to rule 1.11(d), quoted above, which makes it clear that the term "matter" encompasses things which do not necessarily involve litigation, such as applications, ruling requests, contracts, *581 claims, and the like. Rule 1.11(a) is not limited to representing a client at a formal hearing. Petitioners' argument would permit a former Government attorney to undertake any matter on behalf of a private client in which the attorney participated as a public official, as long as the attorney settled it before trial. We find no such exception in rule 1.11. The allocation of the purchase price between the land and pecan trees, which was the major issue in the Tyree case, was originally raised by the notice of deficiency and the petition in the present case. That issue was discussed by the parties and it appears that it can be settled without trial. Nevertheless, rule 1.11(a) provides that a lawyer "shall not represent" a private client in connection with a matter in which he participated while in government practice. Mr. Everett's representation of petitioners in the settlement of this matter, exactly the same as in Tyree, Franzoy, and Corey, is not permitted by rule 1.11(a). Regarding petitioners' second contention that petitioners' interests in this litigation are not "materially adverse" to the Commissioner's, we note that, unlike rule 1.9(a) and (b), rule *582 1.11(a) does not require that the interests of the lawyer's private clients be materially adverse to the Government agency which the lawyer previously represented. Finally, regarding petitioners' contention that there is no evidence that Mr. Everett misused his former Government position, we agree with petitioners' assessment of the record. However, even though the underlying purpose of rule 1.11(a) is to prevent a lawyer from misusing his position as a public official or employee, the rule does not require a showing that the attorney actually misused his former position. "Personally and Substantially Involved"
Rule 1.11(a) requires disqualification of a lawyer only in cases where the lawyer participated in the matter as a public officer or employee "personally and substantially". This requires a showing that the lawyer played more than a supervisory or other indirect role in the matter. ABA Committee on Professional Ethics, Formal Opinion 342, 62 A.B.A. J. 517, 520 (1976), comments on the meaning of a similar phrase in DR 9-101: As used in D.R. 9-101(B), "substantial responsibility" envisages a much closer and more direct relationship than that of a mere *583 perfunctory approval or disapproval of the matter in question. It contemplates a responsibility requiring the official to become personally involved to an important, material degree in the investigative or deliberative processes regarding the transactions or facts in question. * * * [Fn. ref. omitted.] Mr. Everett's participation in the Tyree case was personal and substantial within the meaning of rule 1.11(a). In that case, Mr. Everett was respondent's counsel of record, and he handled the preparation of the case for trial and its eventual settlement. He was the principal actor in that litigation on the Commissioner's behalf. He discussed the case with the Commissioner's engineers, one of whom prepared an expert report for submission to the Court. He requested the Court to subpoena witnesses. He entered into a settlement agreement with the taxpayers' counsel, and he drafted the decision document. After the settlement, he drafted a Counsel Settlement Memorandum which became the standard for settling all cases involving Queen Creek Pecans shelter. He was in charge of the case, and he had access to all of respondent's confidential information concerning the Queen Creek *584 Pecans shelter. If any lawyer personally and substantially participated in the Tyree case, Mr. Everett is that lawyer. Cf. United States v. Miller, 624 F.2d 1198 (3d Cir. 1980); Kesselhart v. United States, 214 Ct. Cl. 124, 555 F.2d 791 (1977); Price v. Admiral Ins. Co., 481 F. Supp. 374, 376 (E.D. Pa. 1979). Mr. Everett's participation in the Franzoy and Corey cases was likewise personal and substantial. For a time, both cases were assigned to him as lead attorney and he prepared and filed the Commissioner's Answer in each case. The preparation of an answer, however routinely, calls for the kind of judgment which is inherent in the practice of law, and a lawyer who makes such judgments participates in the case personally and substantially. See Kadish v. Commodity Futures Trading Commission, 548 F. Supp. 1030, 1033 (N.D. Ill. 1982). Furthermore, a lawyer who signs a pleading thereby certifies, among other things, that he has read the pleading, and that, to the best of his knowledge, information, and belief formed after reasonable inquiry, it is well grounded in fact. Rule *585 33(b), Tax Court Rules of Practice and Procedure. A lawyer who drafts and signs a pleading, and thereby certifies his inquiry and knowledge as to its contents, cannot later deny knowledge or participation in the matter. See Securities Investor Protection Corp. v. Vigman, 587 F. Supp. 1358, 1366-1367 (C.D. Cal. 1984); Telos, Inc. v. Hawaiian Tel. Co., 397 F. Supp. 1314, 1316 n.11 (D. Haw. 1975). We agree with respondent that Mr. Everett's participation in the Tyree, Franzoy, and Corey cases was both personal and substantial. Other Considerations
Upon learning of the possible conflict of interest, respondent's attorneys acted promptly in calling the matter to Mr. Everett's attention and then in making their motion to the Court. There is no evidence that they intentionally delayed filing the motion to disqualify. See Kenosha Auto Transport Corp. v. United States, 206 Ct. Cl. 888 (1975); National Bonded Warehouse Association, Inc. v. United States, 718 F. Supp. 967, 972 (C.I.T. 1989). Furthermore, there is no evidence that respondent is using the disqualification motion as a strategic *586 litigation tactic. See Smith v. Whatcott, 757 F.2d 1098, 1100 (10th Cir. 1985); Laker Airways, Ltd. v. Pan American World Airways, 103 F.R.D. 22, 28 (D.D.C. 1984). For the reasons discussed above, we find that the instant case involves the same matter in which Mr. Everett participated personally and substantially as a Government employee. Accordingly, we hold that his representation of petitioners in the case at docket No. 15266-88 violates rule 1.11(a). To reflect the foregoing, Respondent's motion will be granted. Footnotes
1. DR 9-101(B), Model Code of Professional Responsibility, provides: DR 9-101 Avoiding Even the Appearance of Impropriety. (B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee. [Fn. refs. omitted.]↩