The NATIONAL BONDED WARE-
HOUSE ASS'N, INC., et
al., Plaintiffs,

v.

The UNITED STATES, et al.,
Defendants.

Court No. 87–02–00270.

United States Court of
International Trade.

July 20, 1989.

Sandler, Travis & Rosenberg, Gilbert Lee Sandler, Miami, Fla., for plaintiffs.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Civ. Div., U.S. Dept. of Justice Al J. Daniel, Jr., New York City, for defendants.

## OPINION

RESTANI, Judge:

Defendants, United States, *et al.* bring this motion to disqualify plaintiffs' counsel, Sandler, Travis & Rosenberg, on the grounds that Ronald W. Gerdes, a partner in said firm, impermissibly "switched sides" in this dispute. Defendants claim among other things, that Mr. Gerdes has violated the ABA Code of Professional Responsibility, and that such code requires that plaintiffs' counsel be disqualified from acting as attorneys in this matter. Plaintiffs' counsel claim that even accepting the factual allegations of defendants' motion, Mr. Gerdes has not violated the Code of Professional Responsibility, and furthermore, that any alleged violations fall within a well defined rulemaking exception applicable to former government employees. For reasons discussed herein, the court finds that Mr. Gerdes is not barred from representing plaintiffs in this case. Defendants' motion is therefore, denied.

## BACKGROUND

This case was initiated over two years ago by plaintiffs, National Bonded Warehouse Association ("NBWA").[1] Ronald Gerdes, a partner in the firm of Sandler, Travis & Rosenberg, plaintiffs' counsel, had previous to his employment with Sandler, Travis & Rosenberg been employed as Assistant Chief Counsel for the Customs Service. While employed at the Customs Service, Mr. Gerdes had supervisory responsibility for providing legal advice and counsel to the Customs Service on a wide range of regulatory issues, including the Service's decision to establish and implement the bonded warehouse user fee program. It is this program, or at least some aspects of this program, which plaintiffs contest in their complaint.

The government in its brief cites to several documents regarding the establishment of the user fee program, which it claims Mr. Gerdes either authored, or had responsibility for as a reviewer. The Government asserts that the issues involved in each of these documents are substantially the same as the issues and allegations set forth in plaintiffs' complaint. Defendants' brief at 12–20. *See also* Addendum to Defendants' brief. By affidavit, Mr. Gerdes has challenged the government's characterization of these documents and has asserted that only two of the numerous documents cited by the government, could conceivably be construed as pertaining to the same issues set forth in plaintiffs' complaint. Gerdes' Affidavit at 7. These documents were: 1) a memorandum from the Chief Counsel to the Commissioner of Customs, dated December 17, 1984, approving a recommendation of the Customs Service to increase the bonded warehouse user fee from $650 to $1400 for 1985, which was initialled by Mr. Gerdes, Plaintiffs' exhibit A at 23, and 2) a memorandum allegedly drafted by Mr. Gerdes, dated July 10, 1985, concerning the proposed revision of the annual warehouse fees to establish a three-tiered fee based upon the number of annual entries handled. Plaintiff's exhibit A at 25. At oral argument, the court discovered that this second document was in fact drafted and signed by a second employee on behalf of Mr. Gerdes. Mr. Gerdes has stated that he has

---

1. Since that time, this court has rendered two opinions concerning the jurisdictional basis for this suit, as well as heard various motions concerning the substantive merits of this case, chiefly in the context of a companion case which is now stayed due to the pendency of this action. In fact, this case had progressed sufficiently that prior to defendants' filing of this motion to disqualify, the parties had been engaged in protracted settlement negotiations. Defendants claim that it was in the course of these negotiations that it discovered the so-called "trigger-document" which led defendants to file the present motion. Because of the negotiations the court, upon consultation with the parties, has refrained from resolving various pending motions.

no personal knowledge of this document. It is primarily on the basis of these two documents that the government moves to disqualify plaintiffs' counsel.

## DISCUSSION

■ Where a true conflict of interest arises, the particular attorney or attorneys who created the conflict, should be ordered disqualified by the court. "Conflicts of interest by attorneys give rise to many substantive evils (*e.g.*, unfair advantage in litigation, neglect of duties to the client) and they tend to diminish the bar's image in the mind of the public." *Laker Airways Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27 (D.D.C., 1984). Balanced against this concern, however, is the right of a client to freely choose his counsel. *Government of India v. Cook Industries Inc.*, 569 F.2d 737, 739 (2d Cir.1978). For this reason courts have been wary of ordering disqualification absent strong and specific proof of actual conflict. A disqualification motion should be granted only if the facts present a real risk that the judicial process will be tainted. *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979). When there is no claim that the judicial process will be tainted, "appearance of impropriety is simply too slender a reed on which to rest a disqualification order except in the rarest cases." *Id.* at 1247. With this in mind, the court must give careful attention to the particular facts of Mr. Gerdes involvement, during the time of his employment at the Customs Service, with the issues of concern to plaintiffs in this case.

### I. Mr. Gerdes' Role as A Decision–Maker While at Customs

■ The government alleges that Mr. Gerdes played a key decision-making role in the Customs Service's decision to double bonded warehouse fees in 1985, as well as its subsequent decision to tier such fees for 1986 and 1987. As proof of this assertion, the government presented the court with several documents which it claims demonstrate that Mr. Gerdes was in fact so in-

volved. After reviewing these documents, the court has not been able to determine that Mr. Gerdes had a substantial, or even significant, role in the development or implementation of these regulations. Of the two documents which the court has determined are related to the specific issues in this case, only one can dispositively be said to have been reviewed by Mr. Gerdes. This document, a memorandum from the Chief Counsel's office to the Commissioner of Customs states among other things, that "this major jump in fees may well lead to a challenge that the fee bears no relation to the audit costs of any particular establishment." Plaintiffs' exhibit A at 23. In addition, this memorandum states, "[i]t appears from this Federal Register Notice that the issue of tiering is now dead; at least, it is not mentioned anywhere in the notice or the background file." *Id.* As plaintiffs are now challenging this "jump in fees", as well as the procedural manner in which the fees were tiered, the court finds that this document is related to the substantive issues of the present case. The court does not find, however, that this document in any way proves Mr. Gerdes' substantial involvement in developing the regulations of concern here so as to require disqualification under the facts of this case.

At oral argument it became apparent that Mr. Gerdes was not the author of this document, nor did he contribute significantly to the content of the proposal as set forth. It is also apparent that he was not involved in the technical aspects of the fee setting which is a key aspect of this action. Instead, as Assistant Chief Counsel for the Customs Service, Mr. Gerdes was responsible for reviewing a broad range of Customs regulations in order to determine the legal viability of these regulations. One such regulation was the proposed increase in bonded warehouse fees for the year 1985. As a reviewer of regulatory proposals in general, Mr. Gerdes was presumably privy to any confidential information contained in such proposals. Although the government alleges that Mr. Gerdes was privy to such confidential information it has not proven that such confidential information existed in the present case, or even

that such information could have existed in the context of the development of the regulations at issue. On their face, the documents submitted by defendants contain no information which the court could construe as "confidential" as that term is meant with regard to disqualification.[2] Nor has the government been able to present the court with any proof that Mr. Gerdes was privy to such type of confidential information. The one document which the court has determined was both reviewed by Mr. Gerdes, and pertains to the issues in plaintiffs' complaint, does not say anything of confidential nature, rather it gives only a broad comment on potential litigation. That is, it says that "this major jump in fees may well lead to a challenge." This document does not indicate any change in Mr. Gerdes' views, or that Mr. Gerdes made any unfair use of his previous position to the detriment of defendants.[3]

The second document which the court believes is substantially related to the issues in plaintiffs' complaint is not attributable to Mr. Gerdes, either as author or as reviewer, as he has neither signed nor initialed said document.[4] This document therefore, need not be discussed by the court. The court also observes that the Government offered no affidavit of any official or employee, past or present, indicating Mr. Gerdes was substantially involved in the development of the regulations or the decision to promulgate them.

## II.  The Rulemaking Exception for Prior Government Employees

■ The government has stated that the ABA Model Code of Professional Responsibility is the appropriate code for the court to apply in this case. Choice of law rules, however, point to the jurisdiction with the most significant contacts, as the appropriate jurisdiction for the court to follow when a conflict of law exists. *See,* RESTATEMENT (SECOND) OF CONFLICTS OF LAWS, §§ 6 and 145. In this case, the District of Columbia appears to be the jurisdiction with the most significant contacts to this dispute,[5] therefore, the D.C.Code is likely the most appropriate body of law to be applied.[6] In any case, the court per-

2.  ABA Model Rule 1.11(e) defines "confidential government information" as "information which has been obtained under governmental authority and which, at the time the Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public." Such confidential information by its nature, exists only rarely in the context of a rulemaking proceeding. "The government has few secrets of the kind that Canon 4 is meant to protect. A basic premise of the Freedom of Information and Government in the Sunshine Acts is that, with the exception of classified information, the only types of information that the government should properly seek to protect are matters of tactics, investigatory documents, and similar materials." *Developments in the Law—Conflict of Interest in the Legal Profession,* 94 Harv.L.Rev. 1244, 1431 (1981) (citations omitted.) None of the documents under discussion were kept confidential or claimed as privileged.

3.  Mr. Gerdes did not start the litigation process with regard to the fees upon his departure from the Customs Service. At oral argument it became clear that the case was already being developed at Sandler and Travis when Mr. Gerdes became involved.

4.  The Government submitted an affidavit by Michael T. Schmitz, Chief Counsel of the Customs Service, which states that Assistant Chief Counsels are used as "First Line Supervisors" and that "initials on that memorandum are not considered by this office as mere 'perfunctory' approval." Schmitz declaration at 3. As this document does not even contain Mr. Gerdes' initials the court need not consider this inter-office policy in light of the facts of this case. Furthermore, even had Mr. Gerdes initialed the document, the court does not perceive that his function as a reviewer of the bonded warehouse fees proposal was "substantial" participation as that term is meant in the context of a disqualification proceeding. The court does not imply, however, that one engaged in a supervisory or reviewing capacity is never "substantially" involved with the regulation being reviewed. Rather, the court is only concluding that in this case, Mr. Gerdes' participation was not demonstrated to be substantial.

5.  The main office of the Customs Service is in Washington, D.C. Mr. Gerdes was presumably employed by that office. In addition, Mr. Gerdes is presently employed in the Washington office of Sandler, Travis and Rosenberg.

6.  The court does not rule out the possibility that given the national stature of this court, in some other case, a more generally applicable code of conduct might be applied.

ceives no true conflict between the ABA rules and the D.C.Code. In this case, application of the ABA rules would lead to the same result. Although the ABA Rules and the D.C.Code differ in their wording,[7] the essential impact or purpose of the rules governing former government employees is the same in each. Implicit in both sets of rules is the view that a court should engage in fact specific analysis, taking a narrow view of impropriety when determining whether a former government employee is engaged in the "same matter" as that in which he had substantial responsibility while employed by the government.[8]

In line with this, the court must be particularly cognizant of the current trend towards specialization in government employment. "The judicial system benefits from attorneys who have a specialized expertise, for such attorneys bring to the process both experience and a special insight into those problems which are encountered within the areas of their expertise." *Laker Airways*, 103 F.R.D. at 28. Mr. Gerdes has acquired substantial expertise in customs work as a result of his prior employment at the Customs Service. As was made clear by plaintiffs' counsel at oral argument, Mr. Gerdes involvement with customs issues while employed by the government was broad, encompassing "practically every issue which would be of importance to anyone in the private practice of customs law." Plaintiffs' Brief at 6. Indeed, "questions concerning conflict of interest are likely to arise more frequently when an attorney has a specialized practice, ... since the same parties and similar issues of law will frequently be encountered in subsequent lawsuits." *Laker Airways*, 103 F.R.D. at 28. A court must take care not to discourage other attorneys from entertaining government employment. In considering the competing inter-

ests involved in a motion to disqualify the court must keep in mind that:

> [i]f the Government service will tend to sterilize an attorney in too large an area of law for too long a time, or will prevent him from engaging in the practice of a technical specialty which he had devoted years in acquiring, and if that sterilization will spread to the firm with which he becomes associated, the sacrifice of entering government service will be too great....

Kaufman, Irving R., *The Former Government Attorney and the Canon of Professional Ethics*, 70 Harv.L.Rev. 657, 668 (1957).

It is precisely this concern which the rulemaking exception for former government employees addresses. Disciplinary Rule 9–101(B) of the District of Columbia Code of Professional Responsibility provides that:

> A lawyer shall not at any time accept private employment in connection with any matter in which he or she participated personally and substantially as a public officer or employee, which includes acting on the merits of a matter in a judicial capacity.

In determining whether Mr. Gerdes should be disqualified under this disciplinary rule, the court must first determine whether Mr. Gerdes's activity as Assistant Chief counsel is the same "matter" as alleged in plaintiffs' complaint, and secondly, whether Mr. Gerdes participated "personally and substantially" in that matter while a government employee. *See Laker Airways*, 103 F.R.D. at 29.

The first issue involved is whether the present case is the same "matter" as that which Mr. Gerdes was involved in at the time of his employment at Customs. While at Customs Mr. Gerdes was involved with a broad range of policy issues, one of which was whether or not to raise and/or tier

---

7. ABA Model Disciplinary Rule 9–101(B) provides that:

    A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

    For wording of pertinent D.C. Disciplinary Rule see *infra* at 972.

8. If the court were to take a broad view of impropriety in such a case, the rulemaking exception for former government employees would essentially be nullified. *See generally* ABA Formal Opinion 342 (November 24, 1985) 62 A.B.A.J. 517 (1976).

bonded warehouse fees for 1985. While the present case is concerned with those fees, plaintiffs are not disputing the issue of whether or not the Customs Service may, or should, raise or tier fees, rather they have come before this court protesting the scope and application of the rule as set forth. As is clear from the case law, "rulemaking and policy-making activities do not constitute a 'matter' within the meaning of the Disciplinary Rule for the purposes of disqualifying counsel from a subsequent private lawsuit." *Id.* at 34 (footnote omitted.) Only when the rulemaking activity is "narrow in scope and is confined to specified issues and identifiable parties such that it may be properly characterized as 'quasi-judicial' in nature," *Laker Airways*, 103 F.R.D. at 34, will a rulemaking proceeding and subsequent litigation be considered synonymous to the extent that it constitutes the same "matter" as set forth in the Disciplinary Rule. It does not appear to the court that the rulemaking activity in which Mr. Gerdes was involved was sufficiently narrow in scope to fall within this rule. In any case, as to the second prong of inquiry, as indicated previously defendants have not demonstrated that Mr. Gerdes was personally or substantially involved in developing, promulgating or implementing the regulations now at issue.

### III. The Government's Delay in Filing Its Motion to Disqualify Mr. Gerdes

■ As further support of the insubstantiality of Mr. Gerdes involvement in the development of the regulations at issue is the government's failure to list Mr. Gerdes as a party with substantial involvement or responsibility for the development or implementation of the 1985 and 1986 bonded warehouse fees in its answer to plaintiffs' interrogatories in the companion case. That the government waited so long to press its claim of disqualification in light of this omission, approaches waiver. The Customs officials responsible for the implementation of the bonded warehouse fees

were aware of Mr. Gerdes involvement in this suit over three years ago. *See* Gerdes Affidavit at 10. Mr. Gerdes was employed by Customs as Assistant General Counsel until 1985, just one year before Mr. Gerdes involvement with this case. It is unlikely therefore, that the Customs officials involved in this action were unaware of Mr. Gerdes prior employment, or his involvement as reviewer with the proposed regulations. Given this set of circumstances, any claim of impropriety should have been brought up at the advent of this case. To disqualify plaintiffs' counsel now, after so much time has lapsed would severely disadvantage plaintiffs who to date have been well-served by their counsel.

■ In determining whether to disqualify counsel the court must balance competing interests of all parties concerned. *See generally Government of India*, 569 F.2d at 739. Defendants have made only a flimsy factual showing of impropriety. In addition, they have sat on their claim for over two years, and only on the eve of settlement negotiations have they brought forth their claim of disqualification. Plaintiffs on the other hand, have relied extensively on Mr. Gerdes's handling of their case. On plaintiffs' behalf, Mr. Gerdes has substantially briefed the court on both the complex jurisdictional issues, as well as on the substantive issues in this case. A motion for class certification, and settlement proposals are both pending resolution of this disqualification issue. In light of this, the court believes that on balance, equity favors retention of plaintiffs' present counsel.

### CONCLUSION

Given the fact that the court finds no strong factual predicate for disqualification, that plaintiffs have strong equities in their favor, that defendants, at best, have shown only a technical conflict and that they have shown no real harm to themselves or tainting of the judicial process, the court finds that disqualification is inap-

propriate in this case. Defendants' motion is therefore dismissed. The parties are ordered to continue their settlement negotiations, and to report to the court within fourteen days the outcome of such discussions. Plaintiffs' counsel shall continue to serve unless relieved of such responsibility by order of the court.